## BEVERS v. BRADSTREET.

### Opinion delivered March 1, 1926.

1. EVIDENCE—SECONDARY EVIDENCE.—In an action by a wife against another woman for alienating the affections of her husband, her testimony that she found on the registry of a hotel in another State, where her husband, in his own handwriting, had registered by an assumed name with another woman as his wife, was not inadmissible as not being the best evidence, where such registry was not within her possession, and its production could not have been enforced by the court.

2. EVIDENCE—COMPETENCY.—In an action by a wife against another woman for alienating the affections of her husband, her testimony that she found that her husband registered at a hotel under an assumed name with another woman as his wife was incompetent where there was no showing that defendant was the woman who was so registered.

3. EVIDENCE—HEARSAY EVIDENCE.—The husband's confession of adultery with defendant is hearsay and inadmissible in an action by a wife against another woman for alienating the affections of her husband.

4. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—CONSCIOUS PURPOSE.—In an action for alienating the affections of plaintiff's husband, it was error to instruct the jury that defendant was liable if, by her conduct, she "won the attention and affection of plaintiff's husband," without imposing the requirement that there must have been a conscious wrongdoing on defendant's part.

5. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—ADULTERY.—Where the alienation of a husband's affections is by means of adultery, malice in law is inferred from such wrongful conduct.

Appeal from Sebastian Circuit Court, Fort Smith District; *John E. Tatum*, Judge; reversed.

*Cravens & Cravens*, for appellant.

*Chew & Ford*, for appellee.

SMITH, J. Appellee, who is the wife of T. W. Bradstreet, brought this suit against appellant, Mrs. Carrie Bevers, for the alleged alienation of her husband's affections. The testimony on the part of appellee is to the effect that, after having been married to and after living with her husband for forty-four years, he left his home at Ramona, Oklahoma, and established his abode in a hotel at Bartlesville, Oklahoma, operated by appellant,

and occupied a room in the hotel adjoining that of appellant. There was testimony, which it will serve no useful purpose to state, from which the jury might have found that an immoral relation existed between appellee's husband and appellant, and upon the trial from which this appeal is prosecuted there was a verdict and judgment in appellee's favor for $4,000.

Appellee testified that, after her husband had ceased to live with her, she went to Kansas City, Missouri, and there examined the register of the Dixon Hotel, and found that on August 25, 1922, a Mr. and Mrs. Bradley had registered as man and wife, and that she recognized the handwriting of the man who wrote the names as that of her husband. Appellee also testified that she examined the register of a hotel at Abilene, Kansas, and found that on August 9, 1922, the name of W. O. Wilson and wife had been registered, and she recognized this writing as that of her husband.

An objection was made to this testimony, and it is now insisted that the testimony is incompetent, for the reason that the hotel registers should have been produced. This objection is not well taken. These books were not in appellee's possession, nor were they within the jurisdiction of the court, and their production in court could not have been enforced. *Bozeman* v. *Browning,* 31 Ark. 364.

The testimony was incompetent, however, for the reason that no showing was made that appellant was the woman who had been registered as the wife of appellee's husband. The testimony was therefore irrelevant, and its admission erroneous. It did show an immoral act on the part of appellee's husband, but it was essential, before the testimony became admissible, that it be also shown that appellant was the woman in the case.

While testifying as a witness in her own behalf, appellee offered in evidence an undated letter written on the stationery of the Hotel *Dixon,* Kansas City, Missouri, addressed to no one, which she stated was handed to her by her husband, and which she testified was in his hand-

writing, reading as follows: "Between the 10th of August and the 1st of September, 1922, I registered at the Hotel Sexton at Kansas City, Missouri, under the name of Mr. and Mrs. Bradley. Mrs. Carrie Beavers of the Alameda Hotel in Bartlesville, Oklahoma, was the woman that stayed with me there. T. W. Bradstreet."

Objection was made to the admission of this letter in evidence; and we think the objection was well taken. The letter contains the statement that appellant was the woman who had registered as the wife of appellee's husband at the Hotel Sexton, in Kansas City, under the names of Mr. and Mrs. Bradley.

In the first place, this was hearsay testimony. It would also have been incompetent for Mr. Bradstreet to have given this testimony, had he been personally present. Section 4146, C. & M. Digest.

In holding a very similar writing to have been erroneously admitted in evidence, the Supreme Court of Indiana, in the case of *Underwood* v. *Linton,* 54 Ind. 468, said: "The paper thus admitted was clearly and palpably incompetent evidence against the defendant. Viewing the paper as containing express or tacit admissions of the alleged criminality, it contained but an admission or statement of the plaintiff's wife, and this would be incompetent on general principles. If the statements of a wife were competent evidence against one charged with criminal conversation with her, the husband and wife, by collusion, might make out a case against the most innocent, without even incurring the danger of punishment for perjury."

The case of *Fratini* v. *Caslini,* 66 Vt. 273, was an action for alienating the affections of plaintiff's wife, and for criminal conversation with her, and it was there said: "In actions for criminal conversation it is relevant to inquire into the terms on which the husband and wife lived together before her connection with the defendant, and it is usual to give evidence of what they have said or written to or of each other, in order to show their mutual demeanor and conduct, and whether they

were living on good or bad terms. It is, however, always required that proof should be given that the declarations or letters of the wife, when the husband is the plaintiff, purporting to express her feelings, were made or written prior to the existence of any facts calculated to excite suspicion of misconduct on her part, and when there existed no ground to suspect collusion. I Phil. Ev., § 182; 1 Greenl. Ev., § 102; 1 Whart. Ev., § 225." See also 3 Enc. of Evidence, page 87; Jones' Commentaries on Evidence, vol. 4, § 738 (757); 3 Elliott on Evidence, § 1648; 13 R. C. L., page 1478, chapter Husband and Wife, § 577. The case of *Melcher* v. *Melcher,* 4 A. L. R. 492, contains a very extended annotated note on the subject.

The court gave, over appellant's objection, an instruction numbered 3, reading as follows: "Should you believe from the evidence that plaintiff and her husband were living together in such relation, and were happy and affectionate towards each other, and that the defendant, by her conduct, won the attention and affection of plaintiff's husband, and that thereafter plaintiff's husband showed to plaintiff no love or affection, became unhappy and discontented with plaintiff, brought on by reason of defendant Bevers' attention toward plaintiff's husband, then your verdict should be for the plaintiff, Bradstreet."

This instruction is erroneous in that it requires only that "appellant, by her conduct, won the attention and affection of plaintiff's husband," without imposing the requirement that it be found that there was a conscious wrongdoing on the part of appellant.

In the case of *Hodge* v. *Brooks,* 153 Ark. 222, we said: "Without so intending, one might acquire or lose another's affections. * * * The thing forbidden, and made actionable, is the entry of a home by a wrongdoer, and the consequent loss of *consortium* by the injured spouse; and it does not matter whether this entry is by physical violence or subtle influence; but it is essential that there should be a conscious purpose to do a wrongful act. One

who does this has acted wilfully and wrongfully, and in bad faith to the injured spouse, and is liable to respond in damages therefor."

It is true, as said in § 515, chapter Husband and Wife, 13 R. C. L., page 1467, that "where the alienation of a husband's affections is by means of adultery, malice in law is inferred from such wrongful conduct." But the instruction did not take the question of adultery into account. There was testimony from which the jury might have found that appellant and appellee's husband had been guilty of adultery, but the jury may not have credited the testimony to that effect, and the instruction required the finding only that appellant, "by her conduct, won the attention and affection of plaintiff's husband," who thereafter showed plaintiff no love or affection by reason of appellant's attention to plaintiff's husband, although there may have been no conscious purpose on appellant's part to disturb the harmony of appellee's domestic felicity, and the instruction was therefore erroneous. *Rainwater* v. *Emberton,* 158 Ark. 573; *Boland* v. *Stanley,* 88 Ark. 562; *Roach* v. *Scott,* 157 Ark. 152; 3 Elliott on Evidence, § 1643.

For the errors indicated the judgment must be reversed, and the cause will be remanded for a new trial.