ALEXANDER v. JOHNSON.

Opinion delivered September 29, 1930.

*John W. Goolsby,* for appellant.

*Robert A. Rowe, Harrell Harper* and *A. F. Smith,* for appellee.

MEHAFFY, J. The appellee, Fonzo Johnson, filed suit in the Sebastian Circuit Court against appellant, and alleged that appellant was a physician and had been employed by appellee to treat Rosie Johnson, wife of appellee. It was alleged that Johnson and his wife had two small children, that they lived happily together as husband and wife from the time of their marriage until about June 21, 1928. Rosie Johnson had been suffering from pellagra and appellee took her to Hartford and placed her under the treatment of appellant. It is alleged that she became infatuated with Alexander and her affections alienated from the appellee. That on the 21st day of June, 1928, the said Alexander, by persuasion and undue influence, induced Rosie Johnson to go with him to Howe, Oklahoma, in the night time and that he registered at the Bennett Hotel in Howe as R. S. Alexander and wife, and that they occupied room 10 in said hotel, and that, on account of the wrongful influence exercised by appellant brought to bear upon Rosie Johnson, it so alienated her affections that it caused a separation between appellee and his wife. After the alleged conduct between Alexander and Rosie Johnson, Johnson and his wife separated, and it is alleged that, because of Alexander's conduct he lost the companionship, comforts, society, love and trust of his wife and was deprived of her help in raising their children.

The evidence introduced by appellee tended to show that on the evening of June 21 Alexander and Mrs. Johnson left Hartford and drove to Howe, Oklahoma, registered at the hotel as man and wife and stayed together that night. That next morning they drove back to Hartford, Arkansas, from Howe, Oklahoma, together. The evidence introduced on the part of appellant tends to

show that they did not go together to Howe, and did not stay together at the hotel. In other words, there is a sharp conflict in the evidence as to the conduct of Alexander and Mrs. Johnson. It would serve no useful purpose to set out the testimony in full. The jury returned a verdict for $5,000, judgment was entered for that amount, motion for a new trial was filed and overruled, and the case is here on appeal.

Appellant earnestly contends that there is a total want of evidence to show that the wife stayed at the Bennett Hotel at Howe at the time alleged or any other time.

C. W. Luten, manager of the Bennett Hotel at Howe, Oklahoma, testified positively that on the 21st day of June, 1928, along about 10 or 10:15 or 10:30 p. m., Dr. Alexander and a woman he treated as his wife, registered at his hotel and spent the night there. They came in the hotel and asked for a room and registered, and witness took them to a room, and they stayed all night, and there was but one bed in the room. Witness talked to Dr. Alexander about five minutes before he went to bed. He said he had had car trouble and asked about a garage and said he and his wife would stay all night and have the car repaired next morning. Next morning he went up town, and when he got his car fixed, came back and left. He testified that he recognized the defendant as the man who registered. He also testified that the woman looked to be about 25 years old. He had never seen her before and has never seen her since. The woman who stayed all night with Dr. Alexander did not come out of the depot next morning. He did not pick up a woman there that witness knew of. The only woman witness saw him with was the one he stayed with all night. The evidence also shows that the page of the hotel register containing the names of Dr. Alexander and wife was torn out. There was also evidence that the signature of Dr. Alexander on checks and notes which he admitted was genuine was the same as the handwriting on the hotel register.

Miss May Denton, a niece of Mr. Luten, who lived at the Bennett Hotel on June 21, 1928, testified that Dr. Alexander stayed at the hotel. That this Mr. Alexander and a young lady came down in the office and the young lady asked for a comb, which witness furnished. This witness did not know Mrs. Johnson, but she testified that it was a woman about 25 or 26 years old. She identified Dr. Alexander as the person who stayed at the hotel.

Minnie Lou Gentry, a cousin of Rosa Johnson, wife of appellee, testified that Rosa Johnson came to her residence at Heavener, Oklahoma, on June 22, 1928, about 9 o'clock in the morning in a car with Dr. Alexander. They came to get the baby. Witness was keeping a baby for Mrs. Johnson. They did not take it away she testified, because it cried for her, and Dr. Alexander told Rosa to leave it and they would come back and get it.

Mr. C. W. Luten was recalled and described the woman who spent the night with Dr. Alexander, and the description given by him was a fair description of Rosa Johnson.

The appellee, being recalled, testified to the description of Rosa Johnson, and said she was 26 years old.

Dr. Alexander testified very positively that he was not at Howe and did not register there at any time and did not spend the night there with any woman, but he also testified that on the night of June 21 he had two cases for treatment at Heavener, and that Mrs. Johnson asked him to allow her to go with him. He told her she could go along and she did go. We therefore have the appellant's statement that they left Hartford together, going, as he said, to Heavener, Oklahoma. Dr. Alexander also testified that on the next day he and Mrs. Johnson came back to Hartford in the car; he says he went to Heavener and saw her at the depot, just standing there, and that she got in the car with him and went on down to her uncle's, where the conversation was had about the baby. The positive testimony that Dr. Alexander registered with a woman 25 or 26 years old at the hotel and

spent the night with her, together with the evidence indicating that the description of this woman suited the description of Mrs. Johnson, the fact that they left Hartford together going towards Howe, Oklahoma, and the evidence that they came to her uncle's together next morning and back to Hartford together on the 22d, was sufficient evidence to justify the jury in reaching the conclusion that Dr. Alexander and Mrs. Johnson spent the night together at the hotel in Howe. This evidence is contradicted by Dr. Alexander and his witnesses, but when there is substantial evidence to sustain the finding of facts by a jury, the verdict of the jury is conclusive here. In other words, if the evidence is conflicting, it is the province of the jury, and not this court to pass on the weight of the evidence. We therefore think that the evidence was sufficient on the question of Dr. Alexander and Mrs. Johnson spending the night at the hotel together.

It is next contended by appellant that there is no evidence of any enticement or inducement. We think the evidence to the effect that the wife of Johnson, who was a mother of two little children, went with appellant in his car from Hartford to Howe, Oklahoma, and spent the night with him is ample evidence to support the allegation of inducement.

We said in a very recent case that an instruction is erroneous which simply requires that the appellant by her conduct won the attention and affections of plaintiff's husband without imposing the requirement that it be found that there was a conscious wrongdoing on the part of appellant. *Bevers* v. *Bradstreet,* 170 Ark. 650, 280 S. W. 667. But what stronger proof could there possibly be of conscious wrongdoing on the part of appellant than the proof that he took appellee's wife from Hartford, Arkansas, to Howe, Oklahoma, and spent the night with her in a hotel? This court also said in the case last mentioned: "The thing forbidden and made actionable is the entry of a home by a wrongdoer and the consequent loss of consortium by the injured spouse; it does not matter

whether this entry is by physical violence or subtle influ-ence; but it is essential that there should be a conscious purpose to do a wrongful act. One who does this has acted willfully and wrongfully, and in bad faith to the injured spouse, and is liable to respond in damages there-for.'' The jury must have found that there was a delib-erate. conscious purpose to do a wrongful act.

''Malice, as the term is used in this class of actions, does not necessarily mean that which must proceed from a spiteful, malignant or revengeful disposition; and it has been well said that it would seem on principle to be rare indeed if the motive of a stranger in breaking up a family could be a good one. Hence it has been held that if a stranger interferes between a husband and wife and by advice or inducement causes her to leave him or takes her away with or without her consent and encourages her to remain from him or harbors or protects her while away, he does so at his peril and must assume the burden of proving good cause and good faith for his conduct. Where the alienation of husband's affections is by means of adultery, malice in law is inferred from such wrongful conduct.'' 13 R. C. L. 1466.

Of course the motive in breaking up the home where adultery was shown could not be a good one. Wherever adultery is shown, there is no question about the bad mo-tive and no other proof is necesary.

Appellant next argues that the court erred in giving certain instructions. It is not necessary to set out the instructions in full, because, while arguing that the in-structions are abstract, his only other argument is to the statement in the instructions with reference to wrongful acts and submitting questions to the jury that he contends there was no evidence to support.

As to the contention that the instructions were ab-stract and submitted questions to the jury which are not supported by the evidence, it is sufficient to say that the evidence of adultery justified the giving of the instruc-tions. Again, there was no specific objection made to any

276

instruction. The objections were general, and we have many times held that, unless instructions are inherently wrong, a general objection is insufficient. In this case the instructions given by the trial court properly submitted the questions to the jury and the instructions correctly stated the law. If the appellant had thought they were improperly worded, as he now argues, he should have made specific objection. A general objection is insufficient. *Norton* v. *Bennett,* 181 Ark. 1132, 29 S. W. (2d) 683; *Graves* v. *Jewel Tea Co.,* 180 Ark. 980, 23 S. W. (2d) 972; *Lankford* v. *Cain,* 179 Ark. 461, 16 S. W. (2d) 463. The instructions must be considered as a whole, and, when so considered, they correctly stated the law.

If the evidence introduced on the part of plaintiff is true, the jury was justified in returning a verdict for the appellee. Where the evidence is conflicting, it is a question for the jury. The jury passes upon the weight of the evidence and the credibility of witnesses. In this case, the evidence shows that Johnson and his wife were living happily together, they had two small children, and this evidence is undisputed. The evidence on the part of appellee shows that the appellant took appellee's wife from Hartford to Howe, stayed all night with her in the hotel there, registered as man and wife, and, if this is true, it not only justified the jury in finding for appellee but the verdict was not excessive. The jury found in favor of appellee on conflicting evidence under proper instructions, and the verdict is conclusive here.

The judgment is therefore affirmed.