HARDY *v.* RAINES.

5-1397                                                310 S. W. 2d 494

Opinion delivered February 10, 1958.

[Rehearing denied March 24, 1958]

*Quinn Glover, Langston & Walker, Wayne Foster,* for appellant.

*Howell, Price & Worsham* and *Max Howell,* for appellee.

CARLETON HARRIS, Chief Justice. Appellee, E. E. Raines, Jr., instituted suit against Robert L. Hardy, appellant herein, alleging that Hardy alienated the affections of Mary H. Raines, wife of appellee, and asking actual damages in the sum of $200,000, and punitive damages in the sum of $50,000. Upon trial of the case, the jury returned a verdict for $65,000. From such judgment comes this appeal.

Appellant relies upon five points for reversal, it first being contended that the court erred in overruling appellant's motion for a directed verdict at the close of appellee's case. The law applicable to the matter is expressed in the case of *Roach* v. *Scott,* 157 Ark. 152, 247 S. W. 1037, wherein Justice Wood cited several cases from other jurisdictions and quoted from Elliott on *Evidence* as follows:

"To entitle the plaintiff to recover, in an action for alienating affections, the burden of proof is upon

the plaintiff, and the plaintiff must show that there was a direct interference upon the part of the defendant, that not only was there infatuation of the husband or wife for the defendant, but that the defendant, by wrongful act, was the cause of it. The plaintiff must show a wrongful attempt on the part of the defendant to alienate the affections of plaintiff's husband or wife. The burden is also upon the plaintiff to show that the attempts were successful and without the consent of the plaintiff.''

Appellant's counsel contend that the acts of Hardy did not meet the above definition. It is argued that Hardy was the ''pursued'' rather than the ''pursuer.'' No point would be served in detailing the evidence, though we agree that many acts unfolded by the testimony substantiate, to some degree, appellant's assertion; still, we are only concerned with whether there was sufficient evidence to send this case to the jury, or stated differently, whether there was substantial evidence to support the verdict, and in determining this question, we are required to examine the evidence in the light most favorable to appellee. *Vaughan Hardware Co.* v. *McAdoo,* 196 Ark. 471, 118 S. W. 2d 280. According to appellee's evidence, Hardy was frequently at appellee's home, during his absence, with Raines' wife . . . sometimes alone . . . sometimes with other persons . . . when R a i n e s would walk into the room, the conversation between Hardy and Mary Raines would cease . . . they met over at the stables . . . began going on horseback rides together . . . at least twice alone, and once at three o'clock in the morning . . . on o c c a s i o n s at night spots they constantly danced together . . . Hardy called her by affectionate names, such as ''Prescüs'' and ''Cupcake.'' According to Raines' testimony, at a party at Lake Hamilton, Hardy ''put his arm around her several times and embraced her, taught her how to drive his boat  *  *  *''. He further testified

they were always together on this trip.[1] Applying the rule in *Vaughan, supra,* we find no error.

It is next urged that the court erred in permitting evidence of facts and circumstances subsequent to the divorce[2] to go to the jury over the objections and exceptions of appellant, and in giving the following instruction:

"You are instructed that no testimony as to the relationship, if any, existing between the defendant and the former wife of the plaintiff subsequent to November 1, 1955, the date on which the plaintiff and his former wife were divorced, is to be considered by you as acts contributing to the alienation of the affections of the wife of the plaintiff.

The testimony of the conduct and relationship, if any, between the defendant and Mary Raines subsequent to November 1, 1955, is admitted only for the purpose of aiding you in determining whether or not there were willful and wrongful relations by the defendant with the former wife of the plaintiff during any of the associations you may find the defendant had with her, prior to her divorce from the plaintiff. You may also consider such evidence, if any, for the purpose of determining the state of their feelings, if any, toward each other prior to said separation and divorce, insofar as same might be explanatory of whether or not the defendant's conscious conduct caused the separation and alienation of her affections, if any."

Appellant concedes that, by the weight of authority, evidence of the association and behavior of a plaintiff's wife and a defendant, after a divorce obtained by the wife, is admissible as showing a continuous line of conduct, *Paulson v. Scott,* 260 Wis. 141, 50 N. W. 2d 376, 31 A. L. R. 2d 706, but contends that this rule is only intended in those cases in which there is conduct requiring explanation. Suffice it to say, that we are of the opinion

---

[1] From the testimony: "Q. Well, what else happened on that trip? A. Well, they were always together out there. Mary chased Bob and Bob chased Mary all over the place."

[2] The parties were divorced on November 1, 1955.

some of the acts heretofore mentioned might well require an explanation, and the jury was entitled to consider evidence of actions by the parties subsequent to the divorce to aid in determining their relationship prior to the divorce. The proof showed a number of contacts between Hardy and Mrs. Raines following her divorce from appellee. The evidence reflects that Hardy saw Mrs. Raines at hotels in Peoria, Illinois, Washington, D. C., and Memphis, Tennessee[3] . . . numerous long distance telephone calls from appellant . . . several chartered airline flights by Hardy between Little Rock and Memphis while Mrs. Raines was there . . . the use of Hardy's airline credit card by Mrs. Raines on a trip from Washington to Memphis under the assumed name of Mary Marshall, and various other incidents. The above instruction properly instructed the jury as to the law.

It is next contended that the court erred in refusing to admit the certified and authenticated copy of the pleadings filed in the divorce action of *Raines* v. *Raines*. Mrs. Raines filed suit for divorce against Mr. Raines in July, 1955. Raines filed his answer, and subsequently moved that W. L. Hutson, father of Mrs. Raines, be made a third party defendant in the action. On September 13th, Raines filed a cross complaint against his wife and Hutson. During cross examination of Raines in the instant trial, he was asked if he had not alleged in his cross complaint that his wife "had merely used him and did not love him."[4] Counsel for appellee objected to the question, stating, "That was another lawsuit, and I dictated those pleadings. I filed those pleadings on behalf of Mr. Raines, and the matter is strictly collateral and has no materiality to this lawsuit." The court sustained the objection.

Raines was also asked on cross examination, if he had not, in his cross complaint, accused his father-in-law, W. L. Hutson, of alienating the affections of his

[3] At the Town Park Motor Hotel and Peabody Hotel, she was registered as Mrs. M. Marshall.

[4] Raines was then asked: "Q. Did you ever make a statement, Mr. Raines, that your wife had merely used you and didn't love you? A. I might have after she ejected me from the house out there."

daughter from Raines; this he denied. Under some circumstances, pleadings in former litigation are admissible. For instance, in *Kirkpatrick* v. *American Railway Express Co.*, 177 Ark. 334, 6 S. W. 2d 524, a complaint filed by the same plaintiff in a former case against a different defendant was admitted which contradicted some of the allegations of the complaint in the case being tried. The admission of this evidence was assigned as error. This court, however, in upholding the admissibility, said:

"Appellant admitted that the filing of the complaint was authorized by him, and was based upon information furnished by him to the attorney who prepared it."

In *Taylor* v. *Evans*, 102 Ark. 640, 145 S. W. 564, plaintiff filed an original complaint and subsequently amended the complaint, making contradictory allegations. Counsel for defendants attempted to read the original complaint into evidence. The court refused to permit this to be done, and this was assigned as error. On appeal, this Court said:

"The evidence being competent only for the purpose of showing an admission, or as establishing a contradictory statement of the plaintiff, it is not admissible, where it does not appear that the plaintiff knew of the allegations of the original complaint, or at least where it affirmatively appears that he was not aware of the contents of the complaint. It would be without probative force, either as an admission or as a contradictory statement, unless it was shown that the plaintiff was aware of the contents of the paper. *   *   *"

Of similar import is *Griffin Grocer Co.* v. *Thaxton*, 178 Ark. 736, 11 S. W. 2d 473. In *Mo. Pac. Railroad Co., Thompson, Trustee* v. *Zolliecoffer*, 209 Ark. 559, 191 S. W. 2d 587, the appellant assigned as error, the refusal of the trial court to admit in evidence a certified copy of a complaint filed by the plaintiff in another circuit court against a third party defendant some years earlier. Appellant was attempting to show that some of the injuries complained of in the case under trial had actually been received in the earlier mishap. In up-

holding the refusal of the trial court to admit such evidence, this Court said:

"In the suit at bar, Zolliecoffer was interrogated respecting his former allegations, his injuries, and their duration. He had *neither signed nor verified*[5] the complaint; and he testified that the specific allegations were entirely those of his attorneys * * *."

Likewise, in the cause before us, Raines neither signed nor verified the complaint, and apparently was not too familiar with its contents. This is best shown by an answer made during cross examination. From the testimony:

"Q. As a matter of fact, you made the statement also that it was your father-in-law that alienated your wife's affections from you, haven't you, Mr. Raines?

A. No, I didn't make that statement.

Q. You didn't make that statement? Did you ever hear your lawyer make that statement for you while you were present?

A. I know it is written there, but I didn't make the statement."

A careful reading of the cross complaint shows that no such allegation was made, and Raines apparently confused the purported allegation with an allegation that actually had been made (that Hutson had schemed to obtain appellee's property). At any rate, we think appellant's counsel, through both cross examination of Raines and direct examination of Hutson, made it obvious to the jury appellant was contending that appellee had, in the divorce case, asserted that Hutson was the person who had alienated Mrs. Raines' affections from her husband. Raines apparently was confused as to just what had been alleged, and we actually are of the opinion that his answers, elicited on the cross examination, and the answers given by Hutson during his examination, made a stronger impression in behalf of appellant than would have been made by the pleadings, since,

---

[5] Emphasis supplied.

as stated, the cross complaint of appellee contained no such allegation.

It is next contended that the court erred in permitting evidence of appellant's financial condition to go to the jury over the objections and exceptions of appellant. The evidence, which was brought out on cross examination, reflected that Hardy is the owner of several thousand shares of well known corporate stocks, lands, and other assets, sufficient to support a mortgage of $850,000. As stated in 27 American Jurisprudence, page 167, Section 565:

"Evidence of the financial condition of the defendant, of how much or how little wealth he has, generally is not admissible in an alienation of affections suit, or in an action for criminal conversation, as affecting compensatory damages to be awarded. Evidence is admissible, however, to show that the defendant used his or her wealth as an aid in seducing or alienating the affections of the plaintiff's spouse. * * * Where exemplary or punitive damages are recoverable, evidence of the wealth or financial condition of the defendant is admissible, and is a proper element for the jury to consider in finding such damages, for it is obvious that what would be of no consequence to a rich man might be ruinous to a poor man, * * *."

Appellant asserts there is not "one shred of evidence" that Hardy used his wealth as a means of alienating the affections of Mary Raines. Though we should agree, it would be of no help to appellant in the present instance. The complaint sought punitive damages. Hardy, as previously mentioned, was asked several questions on cross examination relating to his financial condition. The court advised appellee's attorney that such questions were not responsive to the interrogation on direct examination, and that counsel would have to make Hardy his witness for the purpose of showing financial holdings. The attorney for appellant then stated: "I don't think any of his cross examination has been responsive to the direct examination, however, I want the jury to know all the facts as far as they can bring them out.

For that reason, I have not objected." Counsel for appellee then agreed to make Hardy his witness for that particular line of questioning, and proceeded to further interrogate him. After several more questions, appellant's attorney again objected with the statement: "I don't see what the amount of money or lack of money has to do with the alienation of affections suit, and I move that this testimony be excluded." This motion was denied. The questions *did* relate to the charge of alienation of affections because *punitive damages were sought in the complaint,* and prior evidence warranted the interrogation relative to appellant's financial resources. It was therefore proper that the evidence be admitted. Sometime thereafter, the testimony was concluded, and appellee requested an instruction (Plaintiff's Requested Instruction No. 15) advising the jury: "* * * if you find for the plaintiff in compensatory damages and you further find from a preponderance of the evidence that the defendant, Robert L. Hardy, wilfully, maliciously, and intentionally alienated the affections of the plaintiff's wife, then you may assess punitive damages against the defendant. In this connection, you are told that punitive damages are defined as damages assessed by way of punishment to the wrongdoer or as an example to others; and may not be assessed in any event, however, except after compensatory damages have been assessed against the defendant."

The court, apparently feeling that the instruction was not justified under the proof, refused to grant same, and the issue of punitive damages did not go to the jury. Appellant contends that this testimony was prejudicial to his case for he says that while such proof was only admissible as relating to punitive damages, that issue was not submitted; yet, the evidence was admitted, and the court refused to grant same, and the issue of punitive damages did not go to the jury. Appellant contends that this testimony was prejudicial to his case for he says that while such proof was only admissible as relating to punitive damages, that issue was not submitted; yet, the evidence was admitted, and the jury had the benefit of testimony concerning Hardy's wealth in fixing the amount of

compensatory damages. Appellant's argument is sound—except—that he did not request an instruction directing the jury to disregard such evidence in reaching their verdict. In the Texas case of *J. R. Radford Grocer Co.* v. *Hothan,* Tex. Civ. App., 42 S. W. 2d 119, the Court said:

"The evidence referred to in the nineteenth proposition was properly admissible under the plaintiff's pleadings upon the issue of exemplary damages. As heretofore pointed out, this issue was not submitted to the jury, but that did not affect the admissibility of evidence upon the issue. When the court determined not to submit the issue of exemplary damages, appellant should have asked an instruction to the jury to disregard the evidence which had been previously admitted upon the issue."

Other cases denote a similar holding. We accordingly find the contention to be without merit.

Finally, it is urged that the judgment for $65,000 is "plainly and outrageously excessive." We know of no rule or yardstick to use in this type of case. It is true that this is apparently the largest judgment that has ever been awarded in this state in this type of action, but that, within itself, is certainly no reason to consider it excessive. How can one judge, in a monetary sense, the value of a wife's love and companionship? For that matter, a wife, children, and congenial home life mean more to some men than to others. We are confident that the man who is happily married would not sell that happiness, or the love and affection of his wife for $65,000. As was stated by this Court in *Hammond* v. *Peden,* 224 Ark. 1053, 278 S. W. 2d 96:

"Finally it is insisted by appellant that the verdict is excessive, but his brief points out no reason, testimony or circumstances to support this contention except to assert that in a majority of similar cases heretofore considered by this court the judgments were less than the judgment in this case. Since, as we have concluded above, the evidence was sufficient to sustain a judgment in some amount in favor of the appellee, we know

of no established rule by which to weigh in dollars and cents the value to appellee of the loss of the companionship, love and affection of his wife and children. This was a matter for the jury to pass upon after listening to all of the testimony and the instructions of the court.''

Finding no reversible error, the judgment is affirmed.