John P. HVASTA *v.* Jerry M. McGOUGH

82-48                                                   633 S.W.2d 31

Supreme Court of Arkansas
Opinion delivered May 24, 1982

*Stephen Choate,* for appellant.

*Boyett, Morgan & Millar, P.A.,* by: *James "Red" Morgan,* for appellee.

FRANK HOLT, Justice. The appellee sued the appellant for alienation of the affections of his former wife, Carolyn. The appellee and Carolyn had been married seventeen years and had three minor children. The appellant and Carolyn began a clandestine affair which lasted about two years when the appellee discovered Carolyn's and appellant's relationship. The appellee and Carolyn attempted a reconciliation and after about nine months, appellee secured a divorce. The court, sitting as a jury by agreement of the parties, awarded appellee $15,000 damages and dismissed appellant's counterclaim for damages allegedly resulting from appellee's threats and harassment. Appellant first contends for reversal that the trial court erred in not granting

him a directed verdict inasmuch as the evidence failed to prove the alienation of affections.

In a suit for alienation of affections, the burden is on the plaintiff to show direct interference on the part of defendant and that not only was there infatuation of husband or wife for defendant but that the defendant, by wrongful act, was the cause of it; and the plaintiff must show a wrongful attempt on the part of the defendant to alienate the affections of plaintiff's husband or wife, and also that such an attempt was successful and without the consent of the plaintiff. *Hardy* v. *Raines,* 228 Ark. 648, 310 S.W.2d 494 (1958); *Hammond* v. *Peden,* 224 Ark. 1053, 278 S.W.2d 96 (1955); *Roach* v. *Scott,* 157 Ark. 152, 247 S.W. 1037 (1923); and 41 Am. Jur. 2d Husband and Wife § 466. The gist of an action for alienation of affection is the loss of consortium which includes the spouse's society, companionship, love, affection, and aid. *Gibson* v. *Gibson,* 244 Ark. 327, 424 S.W.2d 871 (1968).

Carolyn testified that appellant's business was located in the same building where she was employed. Shortly after they became acquainted their affair began. The appellant gave her much attention, sent her flowers, bought her gifts consisting of several items of jewelry and clothing, took her to dinner at nice restaurants, and treated her "like a queen." During this two year period, they had sexual relations about once a month and sometimes spent the night in motels. They talked of marriage. The appellant told Carolyn he loved her and wished they could get married. Appellant suggested a lawyer she could see for a divorce. She stated the gifts provided by the appellant diminished her love for her husband, the appellee. She believed she would have left him for the appellant had she known her children would be taken care of. In the back of her mind she expected a marrige out of the relationship with the appellant. She was in love with the appellant and would have married him. If it had not been for her relationship with the appellant, she and the appellee would still be married. Before meeting the appellant, she and the appellee had enjoyed a normal married relationship. When the appellee discovered her infidelity, there was a very brief separation after which she returned to

their home for a period of approximately nine months. She reaffirmed her love for the appellee. There was no resumption of her affair with the appellant. She and the appellee attempted a reconciliation which included counseling. This was unsuccessful and appellee secured a divorce from her because he was unable to forget the trauma of the past events. Carolyn has since remarried someone else.

The appellee testified that during the period his wife was having an affair she was not affectionate towards him and there "wasn't much of any" "sexual life" between them. During their attempted reconciliation they sought counseling. It did not help him since he was unable to forgive her. He secured a divorce.

The appellant denied he ever spoke in terms of endearment to Carolyn, that he ever talked of marriage or that he gave her any reason to feel that he wished a continuing relationship or anything more than a night in a motel room. The only gifts he had ever given her were those similar to ones he had given his secretary, other employees or friends. He never suggested she leave her husband.

Appellant argues that the attempted reconciliation of Carolyn and appellee, along with their testimony that during this time they still professed their love for one another indicates that the wife's affections were not alienated from her husband, but rather the husband's affections were alienated as he was unable to cope with the emotional trauma created by the affair. In *Gibson v. Gibson, supra,* we said: "The law presumes that there is always a possibility of reconciliation of husband and wife and this the law encourages." The evidence plainly shows the appellant, by his actions, sought to win the favor of Carolyn. He knew she was married to appellee and that they had children. Carolyn testified that during their meretricious affair her love for her husband, the appellee, diminished, she and appellant discussed marriage, he suggested a lawyer to her for a divorce, and she was in love with appellant and would have married him. Before meeting appellant, she had experienced a seventeen year normal marriage with appellee, they were the parents of three minor children, and she

would still be married to the appellee except for her relationship with appellant. The findings of a trial court, sitting as a jury, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Rule 52, ARCP Ark. Stat. Ann. Vol. 3A (Repl. 1979). *Taylor v. Richardson Const. Co.*, 266 Ark. 447, 585 S.W.2d 934 (1979). Here, we certainly cannot say that the trial court's findings were clearly erroneous.

Appellant next contends that the trial court's award of $15,000 is not supported by the evidence and therefore is excessive. We cannot agree. In *Hammond v. Peden, supra,* the jury returned a verdict in favor of appellee and awarded him $25,000 for damages as a result of appellant's actions in alienating the affections of appellee's wife. There we said that since "the evidence was sufficient to sustain a judgment in some amount in favor of appellee, we know of no established rule by which to weigh in dollars and cents the value to appellee of the loss of the companionship, love, and affection of his wife and children." See also *Weber v. Weber,* 113 Ark. 471, 169 S.W. 318 (1914); *Alexander v. Johnson,* 182 Ark. 270, 31 S.W.2d 304 (1930); and *Hardy v. Raines, supra.* Here, it appears that the acts of the appellant were instrumental in the destruction of a reasonably normal marriage of seventeen years and the parental relationship of three minor children. Therefore, we cannot say the evidence is legally insufficient to support the finding of damages by the trial court.

Affirmed.