Jean B. PORTER *v.*
Genevieve Ilfrey LINCOLN

83-309                                          668 S.W.2d 11

Supreme Court of Arkansas
Opinion delivered April 23, 1984
[Rehearing denied May 29, 1984.]

*Drew & Mazzanti,* by: *W.H. Drew,* for appellant.

*John Lloyd Johnson, Jr.,* for appellee.

ROBERT H. DUDLEY, Justice. Genevieve Lincoln, appellee, filed suit alleging that the affections of her husband, Charles Lincoln II, had been alienated by Jean B. Porter, appellant. A jury trial resulted in an award of $100,000.00 in compensatory damages and $25,000.00 in punitive damages. We find no reversible error in the eleven points of appeal. Jurisdiction is in this court under Rule 29(1) (o).

Appellant first contends that the trial court should have directed a verdict in her favor because the appellee failed to prove she was validly married to Lincoln. The appellee testified that she and Lincoln were married in Benton in

1954 or 1955 but that she had misplaced the marriage license. However, there was a good deal of uncontroverted evidence introduced at the trial tending to establish the marriage of Charles and Genevieve Lincoln. The couple had lived in the same home until their separation in September, 1980; they had continuously held themselves out to be married and were know as Mr. and Mrs. Lincoln; two children were born to the couple; and the couple adopted a child born to appellee from her prior marriage.

Appellant's argument is based almost entirely on the failure of appellee to prove the couple was married on the date alleged in the complaint, June 30, 1954. However, appellee is not held to such a strict standard of proof. We previously addressed the issue of the requisite proof of marriage in a case of this kind. In *Roach* v. *Scott*, 157 Ark. 152, 247 S.W. 1037 (1927), we stated:

> The law as to proof of marriage in actions for alienation of affections is correctly declared in Ency. of Evidence, vol. 1, p. 756, as follows: "In an action for alienating the affections, direct proof of a formal marriage is not necessary, the general rule being that evidence of cohabitation, reputation, and acknowledgment by the parties, a holding themselves out to the world as husband and wife, is a sufficient proof of the fact of marriage. . ."

We find no error in the trial court's refusal to direct a verdict for the appellant on this issue.

At trial, the appellee sought to show a steady flow of cash from Lincoln to appellant. A bank officer and a bookkeeper testified that checks were given by Lincoln to appellant. Appellee testified that she hoped to regain some of the money that her husband had funneled to appellant. The appellant moved for a directed verdict for the "reason that the evidence herein of monies flowing is not a proper measure of damages." The trial court refused to grant the

directed verdict and appellant assigns the refusal as a point of appeal. We find no merit in the point. Appellee did not seek damages solely for "monies flowing" from her husband to appellant. She sought $250,000 for loss of consortium and loss of her husband's affections. In *Gibson* v. *Gibson*, 244 Ark. 327, 424 S.W.2d 871 (1968), we stated that the "gist of an action such as this is loss of consortium, which includes the husband's society, companionship, love and affection, and aid."

Appellant made a motion in limine to exclude evidence prior to Novemebr 14, 1979, and subsequent to November 14, 1980, the date the complaint was filed. On appeal she claims the trial court erred by admitting evidence of events which occurred after November 14, 1980. The trial judge, in denying the motion, stated that "the evidence subsequent to that period is relevant only to show a course of conduct on behalf of the parties. But I think it is admissible so I'm going to deny the motion on behalf of the defendant."

In cases of this type, we have approved the admissibility of evidence subsequent to the accrual of the cause of action for limited purposes. In *Hardy* v. *Raines,* 228 Ark. 648, 310 S.W.2d 494 (1958), we held that testimony of events subsequent to the divorce of appellee and his wife was admissible to show the state of feelings between appellant and appellee's wife prior to the divorce, as such evidence may shed light on the conduct causing the alleged alienation of affections. In *Gibson* v. *Gibson,* 244 Ark. 327, 424 S.W.2d 871 (1968), we cite *Hardy* for the proposition that testimony of post-divorce events is to be considered only as an aid to determining the pre-divorce relationships.

In the case at bar, testimony was introduced concerning events subsequent to the filing of the complaint. This testimony included evidence of acts subsequent to the divorce of appellee and Lincoln. The trial judge was obviously aware the evidence was admissible only for limited purposes and did not commit error by admitting the evidence. A limiting instruction would have been proper under the circumstances but one was not sought.

Appellee inquired, over appellant's objections, about stocks, certificates of deposit, and the bank records of appellant. Appellant contends that there was error in the admission of this testimony because appellant's wealth, or lack of wealth, had no probative worth in determining whether appellant caused an alienation of the affections of appellee's husband. We find the following passage from *Hardy, supra,* citing 27 Am. Jur. § 565, to be controlling:

> Evidence of the financial condition of the defendant, of how much or how little wealth he has, generally is not admissible in an alienation of affections suit . . . as affecting compensatory damages to be awarded . . . Where exemplary or punitive damages are recoverable, evidence of the wealth or financial condition of the defendant is admissible, and is a proper element for the jury to consider in finding such damages, for it is obvious that what would be of no consequence to a rich man might be ruinous to a poor man.

The reasoning of the above passage applies with equal force when the defendant is a woman. Appellee sought punitive damages in this case, and under these circumstances, the financial status of appellant is admissible. Our holding on this point should be narrowly read for, on a number of occasions, we have held that where the issue of punitive damages is erroneously submitted to a jury, together with the defendant's financial condition, an award of compensatory damages is tainted and cannot stand. *KARK-TV* v. *Simon and Smith,* 280 Ark. 228, 656 S.W.2d 702 (1983). Also, this court has not squarely addresed the issue of whether punitive damages are recoverable in an alienation of affections suit and, if recoverable, what standard of proof will be required.

The next point may be quickly dismissed. Appellant's attorney asked Charles Knox Lincoln, the son of appellee and Lincoln, how many alienation of affections suits his mother had filed. Appellee's attorney objected and the judge asked the witness and attorneys to go into chambers so that

he could hear some testimony and arguments of counsel before ruling. Charles Knox Lincoln and appellee were both questioned. The court took the matter under advisement and did not rule while in chambers. The witnesses, the attorneys and the judge then returned to the courtroom with the matter still under advisement. Appellant's counsel did not pursue the line of questioning but, instead, called the next witness. The assertion of error was not sufficiently preserved to makes it available in this court. *Sunray Sanitation, Inc.* v. *Pet Incorporated,* 249 Ark. 703, 461 S.W.2d 110 (1970).

Appellant contends that instruction No. 6 constituted a comment on the evidence. The last part of one sentence of the instruction, standing alone, can be construed to erroneously assume a disputed fact. The sentence is: "You are further instructed that if you find from the evidence in this cause that the home life of the plaintiff and her husband was at times unpleasant, nevertheless, this would not justify the defendant in voluntarily alienating the affections of Charles Lincoln to either separate or remain away from Genevieve Lincoln." The assumption of a disputed fact in an instruction is erroneous. *Thiel* v. *Dove,* 229 Ark. 601, 317 S.W.2d 121 (1958). However, it was harmless error in this case because the other instructions make it clear that the disputed fact was not assumed but, instead, was for the jury to decide. For many years we have held that under these circumstances we do not reverse. *Brinkley Car Works & Mfg. Co.* v. *Cooper,* 75 Ark. 325, 87 S.W. 645 (1905); *St. Louis I. M. & S. Ry. Co.* v. *Brogan,* 105 Ark. 533, 151 S.W. 699 (1912) and *Fort Smith Light & Traction Co.* v. *Schulte,* 109 Ark. 575, 160 S.W. 855 (1913). Instructions are not to be viewed in isolation but are to be considered as a whole to ascertain whether the law applicable to the case is correctly declared. *Peters* v. *State,* 248 Ark. 134, 450 S.W.2d 276 (1970).

Appellant next contends that the trial court erred in giving instruction No. 9 because there was no evidence to support the giving of the instruction. The instruction is based on cases such as *Alexander* v. *Johnson,* 182 Ark. 270, 31 S.W.2d 304 (1930), and is as follows:

If Jean B. Porter induced Charles Lincoln to leave his wife, or encouraged him to remain away from her, or harbored and protected him from her, she did so at her peril and the burden is upon her to show good cause for her conduct and good faith in it.

There was ample evidence for the court to submit the instruction. A bookkeeper testified that from 1975 through 1982 Lincoln gave appellant $18,073.05 or an average of $2,259.13 per year. Lincoln admitted that he and appellant had sexual relations over the past thirteen or fourteen years; that together they traveled to foreign countries as well as various places in the United States. Appellant testified that she and Lincoln spent time together at an exclusive resort in Ponte Vedra, Florida, registered together under the name of Mr. and Mrs. Lincoln. Appellant also admitted that Lincoln gave her a gold Rolex watch, a diamond pendant, and a gold chain bracelet. In addition, there was other disputed testimony. The lack of a specific statement by appellant encouraging Lincoln to separate from his wife does not mean that appellant did not alienate the affections of Lincoln. Her actions speak for themselves. *See Hardy* v. *Raines*, 228 Ark. 648, 310 S.W.2d 494 (1958).

Appellant's next objection goes to instruction No. 16. The instruction is as follows:

In addition to compensatory damages for any actual loss that Genevieve Lincoln may have sustained, she also asks for punitive damages. Punitive damages may be imposed in addition to any compensatory damages awarded to punish a wrongdoer and to deter others from similar conduct. Before you can impose punitive damages you must find that Jean B. Porter knew or ought to have known in the light of surrounding circumstances, that her conduct would naturally or probably result in injury and that she engaged in such conduct wilfully, or in reckless disregard or conscious indifference to the consequences, from which malice may be inferred. In addition, malice may be inferred

from a finding that Jean B. Porter and Charles Lincoln engaged in illicit sexual intercourse. You are not required to assess punitive damages against Jean B. Porter, but you may do so if justified by the evidence.

The appellant's objection to the giving of this instruction on punitive damages was: "It permits wholly and solely a finding on sexual intercourse. We object to it generally also." The objectionable sentence, the next to last one, appears to be taken from our case of *Alexander* v. *Johnson,* 182 Ark. 270 at 275, 31 S.W. 304 (1930), where we stated: "Where the alienation of husband's affections is by means of adultery, malice in law is inferred from such wrongful conduct." The instruction was a correct statement of law and we will not reverse on the objection made. This point also should be construed narrowly because there was no motion for a directed verdict on the issue of punitive damages and we do not reach the issue of whether punitive damages were proper. In addition, the objectionable sentence constituted a comment on the evidence. *See Thiel* v. *Dove,* 229 Ark. 601, 317 S.W.2d 121 (1958). The objection raised did not present the trial judge with the opportunity to rule on either of those issues.

The appellant also complains that the trial court refused to give two instructions requested by the appellant. Both were repetitious. A trial court is not required to give repetitious instructions. *Vanlandingham* v. *Gartman,* 236 Ark. 504, 367 S.W.2d 111 (1963).

Affirmed.

ADKISSON, C.J., and HICKMAN and HOLLINGSWORTH, JJ., dissent.

P. A. HOLLINGSWORTH, Justice, dissenting. The record in this case shows the alienation between the Appellee and her former husband was of long duration. It is apparent that

an encounter between Appellee, Appellee's husband and Appellant at the motor freight terminal in 1973 was the first disclosure to Appellee of any alienation of affection. The cause of action, if any existed, accrued at that time. Section 37-201 provides that a cause of action for alienation of affections shall be commenced one year after the cause of action shall accrue, and not thereafter.

I would reverse and dismiss.

ADKISSON, C.J., joins in this dissent.