SHARPENSTEEN *v.* PEARCE.

4-9655                                                      245 S. W. 2d 385

Opinion delivered January 28, 1952.

*Smith & Smith,* for appellant.

*Eli Leflar,* for appellee.

GEORGE ROSE SMITH, J. This is a suit brought by the appellee for breach of a contract for the purchase of chickens. The appellant, as defendant below, admitted having agreed to buy the chickens, but he contended that some of the birds had contracted colds before delivery and that by a trade usage in the industry the buyer is not required to accept diseased fowl. The trial court refused to permit the defendant to prove this trade usage, and upon the other evidence there was a verdict for the plaintiff for the difference between the price the defend-

ant agreed to pay and the price at which the plaintiff later sold the poultry to some one else.

On Monday, March 27, 1950, the defendant examined the chickens at the plaintiff's farm and agreed to buy the flock and to pick up the chickens during the week. Part of the flock, then in good health, was picked up the next day. But the defendant's wife testified that when she brought the truck back two or three days later to load the remaining birds she found that they had taken cold; so she refused to accept them. The defendant offered several witnesses to prove the trade usage we have mentioned, but the court held that the proffered testimony was inadmissible as tending to impeach the testimony of defendant and another of his witnesses.

Apart from the question of impeachment, the trade usage was relevant. If the usage was known to both parties or so widespread in the industry that the contract would be presumed to have been made with reference to it, it became part of the agreement. *Ben F. Levis, Inc., v. Collins,* 215 Ark. 172, 219 S. W. 2d 762; Rest., Contracts, § 246, Illustration 11. Of course a trade usage cannot change a rule of law, Rest., § 249, but there is nothing in the law of sales to prevent the parties from incorporating the present trade usage in their contract. By the Sales Act the goods remain at the seller's risk until the property therein is transferred to the buyer. Ark. Stats. 1947, § 68-1422. The time when title passes is a matter of intention, and the statute expressly provides that for the purpose of ascertaining such intention regard shall be had to usages of trade. § 68-1418.

On the matter of impeachment the court was in error. The defendant had testified that diseased chickens were not salable in the markets in which he intended to resell this poultry, but that such fowl could be sold in some other markets. One of his witnesses had testified to the same effect. The trial court seems to have concluded that proof of the trade usage would contradict the admission that diseased fowl could be sold in some markets at least.

We gather from the record that the defendant and his witness were talking about resale markets in other States and not about contracts made with chicken growers in northwest Arkansas; so there may have actually been no inconsistency in the testimony. But in any event the rule relied upon by the trial court does not apply to this situation. By offering a witness a party impliedly vouches for his credibility and cannot later impeach him by showing that his reputation for truth is bad. But this does not mean that if a witness has been false or mistaken in his testimony the party is forever precluded from proving the truth by other witnesses. On the contrary, a witness may be contradicted as to any fact about which he has given evidence. *Midland Valley R. Co.* v. *Lemoyne,* 104 Ark. 327, 148 S. W. 654. Hence the proffered testimony should have been received.

The defendant also pleaded the statute of frauds, but since some of the chickens were accepted and received by the purchaser the contract was taken out of the statute. Ark. Stats., § 68-1404.

Reversed and remanded.