HOME INDEMNITY CO. *v.* RAY.

5-2768                                                361 S. W. 2d 24

Opinion delivered October 15, 1962.

*Shaver, Tackett & Jones,* for appellant.

*Joe D. Woodward* and *Harry Crumpler, (Robert C. Compton,* on the brief), for appellee.

ED. F. McFADDIN, Associate Justice. Trial in the Circuit Court resulted in a judgment whereby the appellees recovered from the appellant on the omnibus coverage clause in the insurance policy issued by appellant; and this appeal challenges such judgment.

On November 26, 1959, Grady Junior Talley (hereinafter called ''Talley'') was driving a motor vehicle on U.S. Highway No. 82 in Columbia County. There was a

collision between that motor vehicle and one driven by Arthur Ray, resulting in the death of Arthur Ray, and property damages and personal injuries to Miss Helen Bain, the owner and occupant of the car Ray was driving. Action was filed in the Columbia Circuit Court against Talley by Miss Bain and by Jewell Ray, administrator of the estate of Arthur Ray, deceased. (They are the appellees in the present appeal.) Judgments were obtained against Talley for $26,500.00 in favor of Miss Bain, and for $35,000.00 in favor of Ray, as administrator. Executions on said judgments were returned *nulla bona,* and then Miss Bain and Ray, Administrator, proceeding under § 66-4002 Ark. Stats., filed the present action against appellant, The Home Indemnity Company, alleging the foregoing matters and also: that D. C. Littrell was the owner of the motor vehicle driven by Talley in the traffic collision; that Littrell had granted permission to Talley to drive said vehicle; that Littrell had a liability insurance policy with appellant, The Home Indemnity Company, covering said vehicle, with limits of $5,000 for property damage and $10,000 for each collision; that said policy had an omnibus coverage clause which made Talley an insured under said policy; and that The Home Indemnity Company, after due notice, had refused to defend appellees' action against Talley. The prayer of the complaint was for judgment for $5,000.00 personal injuries and $1,550.00 property damage in favor of Miss Bain; and $5,000.00 damages for Ray, Administrator (being the limits of the policy coverage), ". . . with 12% penalty and reasonable attorney's fee, as prescribed by law."

By answer, the appellant Insurance Company stated, *inter alia*:

"Defendant admits and alleges that a liability insurance policy had been executed by this defendant prior to the date of the collision in favor of D. C. Littrell, covering the involved vehicle which was involved in the collision while being driven by Grady Junior Talley, indemnifying D. C. Littrell, *and any driver operating the*

*vehicle with his permission,*[1] against loss by reason of liability arising from accidents in which the involved vehicle might subsequently be involved, with policy limits of $5,000 for personal injuries suffered by each person in each accident, limiting personal injury recovery to $10,000 for each accident, and limiting property damage liability to $5,000 for each accident. Defendant denies that the insurance policy enured to the benefit of Grady Junior Talley, and defendant denies that Grady Junior Talley was operating the motor vehicle with the permission of the owner, D. C. Littrell. Defendant admits that it refused to defend the Complaint by and on behalf of plaintiffs against Grady Junior Talley, and that the defendant has refused to pay any portion of the judgment obtained against Grady Junior Talley. Defendant denies that plaintiffs are entitled to any benefits afforded by the liability insurance policy in favor of D. C. Littrell.'"[2]

Trial to a jury resulted in verdicts and judgment for Miss Bain and Ray, Administrator, as prayed; and The Home Indemnity Company brings this appeal, urging the points herein discussed.

I. *Defendant's Request For An Instructed Verdict.* At the close of all the evidence, the Court denied the defendant's request for an instructed verdict; and in testing the correctness of such ruling, we recite the evidence in the light most favorable to the verdict, as is our rule. See *Life & Cas. Co.* v. *Kinney,* 206 Ark. 804, 177 S. W. 2d 768, and cases there cited.

The evidence showed that D. C. Littrell owned and operated a potato farm near Canton, Texas; that Talley, a Negro man, lived near Waldo, Arkansas, as did two other Negro men, named Witcher and Robinson; that in September, 1959, Littrell and another farmer employed Talley, Witcher, and Robinson to work in the harvesting of the potato crop on the Texas lands; that on one or

---

[1] Italics our own.

[2] The attorney for the Insurance Company stated to the Trial Court: "The whole litigation is whether or not the Negro (Talley) was driving with permission. The plaintiffs have alleged that he was driving with permission, and we have denied that he was driving with the permission of the owner."

two occasions either Littrell or the other farmer had transported Talley, Witcher, and Robinson from Canton, Texas to Waldo, Arkansas, in order that the said employees could visit their respective homes; that while at work Talley kept Littrell's Chevrolet pickup truck at the place where Talley stayed near Canton, Texas; that Talley, with Littrell's consent, used the truck to go to the picture show and to get groceries; and that it was this same pickup truck that was involved in the traffic collision.

The evidence further showed that on the afternoon before Thanksgiving of 1959, Littrell agreed that if Talley, Witcher, and Robinson would help Littrell move some cattle, he would allow Talley the pickup truck to transport Talley, Witchell, and Robinson to Waldo for Thanksgiving. Littrell immediately called his insurance agent and obtained an insurance policy for the trip; and it is the policy sued on by the appellees. When the cattle moving was completed, Talley, Witcher, and Robinson left Canton, Texas, about 9:00 P.M. Wednesday night in the Chevrolet pickup truck, and arrived in Waldo, Arkansas about 1:00 A.M. Thanksgiving morning.

Talley and Littrell both testified that Littrell instructed Talley that when he reached Waldo he was to leave the truck with Mrs. Fannie Mitchell, who lived near Waldo, and that the truck was to so remain until Talley was ready to return to Texas after Thanksgiving. Talley testified that he took the truck to Mrs. Mitchell's house about 9:00 A.M. Thanksgiving morning, but that no one was at home; and that he later made another trip to Mrs. Mitchell's home, and no one was there. It developed that Mrs. Mitchell had only recently married and moved a short distance from her former home and was Mrs. White. Until after the collision this was unknown to Littrell, as well as Talley. Littrell gave Talley no specific instructions as to where to leave the truck if Mrs. Mitchell was not at home; but Talley and Littrell both testified that Talley had been instructed that he was not to drive the truck on private ventures while he was on the trip. That

negative restriction on the permission to use the truck is the main defense of the Insurance Company.

Talley testified that when he found no one at home at Mrs. Mitchell's house, he did not leave the truck:

"Q. On that morning why did you take that truck on with you?

"A. Because that is what I was supposed to do.

"Q. Why didn't you leave it there?

"A. Because she wasn't there.

"Q. Why did you take it back with you?

"A. Because I was in charge of it.

"Q. You felt responsible for it?

"A. Yes, sir."

After a second unsuccessful effort to find anyone at home at Mrs. Mitchell's, Talley and another boy started to drive to Buckner, Arkansas, and enroute had the traffic collision that caused the injuries to Miss Bain and the death of Arthur Ray. The Insurance Company claims that, under the testimony of both Littrell and Talley, it is clear that the permission under which Talley received the truck contained a specific negative restriction against such driving as was being done at the time of the traffic collision and, therefore, that permission was absent and there was no insurance coverage.

The Insurance Company called Littrell as a witness, so the plaintiffs are not bound by his testimony. Furthermore, even though the plaintiffs called Talley as a witness, the plaintiffs were and are free to contradict the details of his testimony by other witnesses. Talley was not a party to the case, but only a witness. *Sharpensteen* v. *Pearce,* 219 Ark. 916, 245 S. W. 2d 385; *Arnold* v. *State,* 233 Ark. 3, 342 S. W. 2d 291, and cases there cited. The plaintiffs showed by other witnesses, including the Sheriff of Columbia County and the Prosecuting Attorney of the District, that Littrell had repeatedly ad-

mitted that he let Talley have the truck, and that in none of these conversations had Littrell, when the collision was under investigation, made any claim that he had placed any negative restrictions on Talley's driving the truck while in Waldo. The plaintiffs also showed by Witcher and Robinson on cross-examination that when Littrell let Talley have the truck, nothing whatsoever was said by Littrell as to what Talley was to do with the truck if Mrs. Mitchell was not at home.

In view of all the evidence, we reach the conclusion that a jury question was made as to whether there was in fact a negative restriction placed on the permission that Littrell gave Talley as to the truck; and, with a jury question made, certainly the motion for an instructed verdict was correctly denied.

Counsel for both sides have been diligent in their search for cases on the omnibus coverage in insurance cases. We are cited to an array of cases and authorities on the question. Some of these are: *Allstate Ins. Co.* v. *Mathis*, 232 Ark. 484, 339 S. W. 2d 132; *Traders & General Ins. Co.* v. *Powell* (8th Cir.), 177 F. 2d 660; *Standard Accident Ins. Co.* v. *Rivet* (5th Cir.), 89 F. 2d 74; *Columbia Gas. Co.* v. *Lyle* (5th Cir.), 81 F. 2d 281; *Martin* v. *Burgess* (5th Cir.), 82 F. 321; *Nyman* v. *Monteleone*, 211 La. 375, 30 So. 2d 123; *Olgin* v. *Employers Mutual* (Tex. App.), 228 S. W. 2d 552; Blashfield Cyclopedia of Automobile Law & Practice, Vol. 6, Pt. 1 § 3946; Am. Jur. Vol. 5A, p. 99 *et seq.*, "Automobile Insurance" § 98 *et seq.;* and a splendid annotation in 5 A.L.R. 2d 600, entitled, "Automobile Liability Insurance: Permission or consent to employee's use of car within meaning of omnibus coverage clause." We find it unnecessary to decide (a) whether the law of Texas covers; (b) what the law of Texas is; or (c) whether Arkansas should adopt the conservative, liberal, or middle of the road view on omnibus coverage. If there was no negative restriction attached to the permission when Littrell let Talley have the truck, then Talley occupied the status of an insured under the policy; and, as aforesaid, there is evidence to take the case to the jury on the question

as to whether there was a negative restriction in the permission.

II. *Instructions.* The Insurance Company offered instructions which stated that before the plaintiffs could recover the jury must find that Talley was ''on the involved occasion driving the pickup truck with specific permission and authority,'' etc. After the quoted words the Court added, ''express or implied.'' The Court defined ''express or implied,'' and then in other instructions the Court added the words, ''express or implied,'' in regard to the permission that Talley had to use the truck. The Insurance Company objected in each instance to the addition of the words, ''express or implied,'' and insists that Littrell had given a specific negative restriction on Talley's permission to drive the truck, and that such restriction made any ''express or implied'' permission impossible.

We find no error in the ruling of the Trial Court in regard to the point here under consideration. It was testified by several witnesses that Littrell did not tell Talley what to do with the truck in the event that Mrs. Mitchell was not at home. It was shown that when Talley was at work for Littrell in Texas, Talley kept the truck at the place where he stayed, and with Littrell's knowledge used the truck as he desired to go for groceries and to go to the picture show; and it was shown, as heretofore detailed, that Littrell let Talley have the truck to make the trip to Waldo, Arkansas. With such evidence in the record, the matter of express or implied permission was properly included in the instructions to the jury.

Affirmed.