Ernest L. LOEWER *v.* NATIONAL BANK OF
ARKANSAS

92-506                                        844 S.W.2d 329

Supreme Court of Arkansas
Opinion delivered December 21, 1992

*Crockett, Brown & Worsham, P.A.*, by: *R.J. Brown* and *Richard E. Worsham*, for appellant.

*Davidson Law Firm*, by: *Brandon L. Clark*, for appellee.

DAVID NEWBERN, Justice. This case involves two competing claims to furniture, fixtures, and equipment (referred to hereafter collectively as "the equipment") used by National Bank of Arkansas (NBA). Ernest L. Loewer, the appellant, claimed ownership resulting from an assignment from one J.R. Hodges. The jury found the appellee, NBA, owned the equipment by virtue of a purchase agreement executed between it and Interstate Leasing Incorporated (Interstate), Hodges' corporation. Loewer argues (1) there was insufficient evidence to support the finding that NBA owned the equipment, (2) the Circuit Court erred by awarding NBA $50,000 in attorney's fees, and (3) the Circuit Court abused its discretion by failing to impose sanctions against NBA for discovery violations.

We hold (1) the evidence was sufficient to support the jury's verdict as to ownership, (2) there was statutory authority to award the attorney's fees, and (3) there was no abuse of discretion in the decision to decline to impose discovery sanctions. The judgment is affirmed.

NBA made two loans to Loewer. On December 19, 1984, Loewer borrowed $31,741.14 from NBA at 13.5% interest. The same day Loewer borrowed $56,054.58 also at 13.5% interest. The loans were evidenced by two promissory notes from Loewer which were made payable to NBA on demand or on March 19, 1985. Loewer received four extensions but failed to make any payments on the principal. On March 10, 1989, NBA filed suit in Pulaski County Circuit Court to collect the principal plus interest.

Loewer admitted failing to make payments under the terms of the notes but alleged he was the owner of the equipment which had been intentionally converted by NBA. Loewer claimed entitlement to set off his debt to NBA in the amount of damages suffered as a result of the conversion. NBA answered, asserting a prior ownership interest in the equipment.

To understand the conversion claim, it is necessary to examine the history of transactions involving the equipment. NBA did not want to own equipment used in banking operations because of the effect of ownership on NBA's balance sheet. If NBA leased, as opposed to owning, federal regulations would allow more loans to be made to customers. The executive vice-president of NBA, Ted Blagg, approached NBA's largest depositor, Hodges, about purchasing the equipment and leasing it back to NBA. Blagg testified he told Hodges that when the lease expired, NBA would purchase the equipment at an agreed upon price. Hodges agreed to purchase the equipment through Interstate.

The five-year lease dated December 1983 between Interstate and NBA provided for monthly rental payments of $9,394.88. Article II of the lease stated:

> This is an agreement of lease only. Nothing herein shall be construed as conveying to Lessee any right, title or interest in or to the Equipment leased hereunder, except the express interest hereunder of Lessee as a lessee to maintain possession and use of the Equipment for the full term of this lease. No options or agreements for purchase of the Equipment by Lessee or extension of the term hereof exist, nor shall any be implied, except as specifically stated in the Schedule.

The agreement provided in Article IV that when the lease expired, NBA would return the equipment to Interstate at NBA's expense. Article XX stated, "This lease contains the entire agreement between the parties with respect to the Equipment and may not be altered, modified, terminated or discharged except by a writing signed by the party against whom such alternation, modification, termination or discharge is sought."

Blagg testified that, at the same time the lease was executed, three other documents were prepared, plaintiff's exhibits six, seven, and eight. Exhibit 6 was an undated letter from Hodges to Blagg which stated:

> This letter will confirm the price at which you may purchase the residual value of the furniture, fixtures and equipment; which National Bank of Arkansas is leasing from Interstate Leasing, Inc. After due consideration, it is my opinion that the fair market value of the leased property as of December 20, 1988, is $39,845.47.

Exhibit 7 was a bill of sale indicating the grantor, Interstate, sold the equipment to the grantee, NBA, for $39,845.47. The bill of sale was executed on December 20, 1985, and signed by Hodges. Exhibit 8 was a promissory note from NBA to Interstate in the amount of $39,845.47. The note was to be paid by NBA on December 20, 1985. Although the documents do not reflect this fact, Blagg testified they were all prepared at approximately the time the lease was executed.

There was testimony that Blagg told Ron Tullos, then chief executive officer of NBA, to take the bill of sale, valuation letter, and promissory note away from NBA and bring them out five years later at the expiration of the lease. Tullos placed the documents in his personal files at his home. Copies of the original documents were accidentally found by a loan officer in a safe deposit box at NBA only a few days before trial.

On March 6, 1984, Interstate and NBA executed an addendum to the lease providing that Interstate would remove the equipment at the termination of the lease at Interstate's expense. Interstate and NBA executed the addendum despite the fact that NBA had allegedly previously agreed to purchase the equipment at the expiration of the lease. Blagg explained accountants told

NBA the addendum was necessary to make the lease an operating, versus a capital lease.

Loewer testified that in July of 1986 Hodges gave him an assignment of the NBA lease and a bill of sale to the equipment. Hodges did so to cover part of a debt he owed to Loewer. Hodges stated he did not remember signing the valuation letter, executing the prior bill of sale to NBA, or seeing the promissory note from NBA to Interstate. Hodges admitted there were discussions between himself and NBA concerning a buy out at the expiration of the lease, but that the buy out would be at a fair market value. Both Hodges and Loewer testified about the existence of the 1986 assignment and bill of sale, but we find nothing in the record to indicate these documents were introduced at trial, and they have not been abstracted for purposes of appeal.

Another party to this action was Savers Federal Savings & Loan Association (Savers). Savers loaned the purchase money which enabled Interstate to buy the equipment for NBA. Savers, therefore, had a superior right to the equipment by virtue of its purchase money lender status. NBA recognized Saver's claim to the equipment and filed a third party complaint against Savers. Savers, through its conservator FDIC, removed the entire case to United States District Court for the Eastern District of Arkansas. On June 7, 1990, the District Court granted a partial summary judgment for Savers, declaring they had a first lien on the equipment. The pending claims and counterclaims were then remanded to the Circuit Court.

As Savers threatened to foreclose, NBA purchased its judgment for $67,500. After notifying Interstate and Loewer, NBA sold the equipment to Diversified Financial Investments for $72,000.

NBA's first amended complaint and third party complaint requested (1) a monetary judgment against Loewer on the two promissory notes, (2) a judgment declaring its ownership of the equipment under the agreement, and alternatively, (3) an order setting aside the bill of sale and assignment to Loewer as a fraudulent conveyance in the event Loewer was found to have any interest in the property.

After the evidence was presented, the Trial Court granted

NBA's motion for directed verdict on Loewer's liability on the promissory notes. Loewer's counterclaim was submitted to the jury by this interrogatory: "Do you find from a preponderance of the evidence that National Bank of Arkansas and Interstate Leasing Inc. entered into an agreement whereby National Bank of Arkansas purchased the furniture, fixtures and equipment?" The jury responded "yes." The Court awarded judgment against Loewer in the amount of $130,851.21, plus $50,000 in attorney's fees, and $4,493.68 in costs. The Court then declared NBA entered into a lawful contract to purchase the equipment on December 20, 1983, and was the owner of the property free and clear of any claims by Interstate or Loewer. Loewer's conversion claim against NBA was dismissed with prejudice.

## 1. Substantial evidence

Loewer argues there was no substantial evidence supporting the jury finding that NBA purchased and owned the equipment as of December 1983. To support his argument, Loewer relies on the provision of the lease stating NBA had no option to purchase and the provision stating the lease constituted the entire agreement between the parties. He also contends the addendum to the lease executed in March 1984 conclusively established NBA did not own the property as of December 1983.

We will affirm a jury verdict if supported by substantial evidence. *Handy Dan Improvement Center, Inc.* v. *Peters*, 286 Ark. 102, 689 S.W.2d 551 (1985). Substantial evidence is defined as that which is of sufficient force and character that it will compel a conclusion one way or another, forcing the mind to pass beyond suspicion or conjecture. *Bank of Malvern* v. *Dunklin*, 307 Ark. 127, 817 S.W.2d 873 (1991). In testing the sufficiency of the evidence on review, we need only consider that part which is most favorable to the appellee, here NBA. *Love* v. *H.F. Construction Co.*, 261 Ark. 831, 552 S.W.2d 15 (1977).

The evidence supports the conclusion that Interstate and NBA entered into a purchase agreement in December 1983. It is true that NBA and Interstate executed a lease stating it was the entire agreement between the parties and no options to purchase existed. During the same approximate time period, however, Hodges sent Blagg a valuation letter confirming the price at which the equipment would be purchased by NBA at the

expiration of the lease. A bill of sale showed Interstate transferred to NBA all its interest in the equipment, and the promissory note from NBA to Interstate evidenced NBA's financial obligation for the purchase.

A case particularly instructive on the issue presented is *Ark. Aviation Sales* v. *Carter Const.*, 250 Ark. 1007, 469 S.W.2d 118 (1971). There the lessor of an airplane, Arkansas Aviation, and the lessee, Carter Construction, entered a five-year lease which contained an option to purchase. Two weeks after the original lease was executed the parties mutually agreed to delete the purchase option for tax purposes. When the lease expired, Arkansas Aviation claimed it retained ownership of the aircraft and Carter Construction claimed it acquired ownership by virtue of the option to purchase language found in the original lease. The Chancellor found for Carter Construction and allowed parol testimony to show the parties intended for the lease to remain a lease-purchase agreement, and the option to purchase language was deleted only for tax purposes.

■ We affirmed, stating "parties to a written contract may, subsequent to its execution, modify it and substitute a valid oral agreement therefor." *Ferguson* v. *C.H. Triplett Co.*, 199 Ark. 546, 134 S.W.2d 538 (1939). The option continued:

> In these circumstances, we are of the view that the deletion of the lease purchase paragraph from the written contract, for tax purposes, was a proper subject for a "side agreement;" that this deletion would not affect the original agreement between the parties and is consistent with their contract; and that it is an oral or collateral agreement which "might naturally be made as a separate agreement by parties situated as were the parties to the written contract." Therefore, the trial court did not err in admitting parol testimony by the original parties to establish their "side agreement" made subsequent to the parties' written contract, and to show the scope and effect of this oral agreement.

■ We recognize that in the present case, the lease failed to include an option to purchase the equipment. There was evidence presented that the lease was not structured as a lease-purchase agreement for tax and regulatory purposes. Subsequent to the

execution of the lease, testimony existed that Interstate and NBA entered into a "side agreement," whereby an option to purchase the equipment was extended to NBA. This is shown by the valuation letter sent from Hodges to Blagg. The jury was presented with evidence in the form of the bill of sale and the promissory note that NBA exercised its option at the beginning of the lease. The jury thus had before it substantial evidence that the lease agreement was intended to operate as a lease-purchase agreement, and that NBA exercised its option and became the owner.

## 2. Attorney's fee

■ Loewer raises several objections to the $50,000 in attorney's fees. He first argues the amount of fees awarded should be a question for the jury to resolve, not the Trial Court. It is undisputed that the award was determined by the Court based on affidavits of NBA's counsel. We find no indication in the record that Loewer requested a hearing on the amount of fees assessed, and thus he has waived this issue on appeal. Arkansas Code Ann. § 16-22-308 (Supp. 1991) provides that in actions to recover on promissory notes, a reasonable attorney fee may be assessed by the court and collected as costs. Loewer also contends he was not given any notice or opportunity to be heard on the amount of fees assessed. As stated previously, we find nothing in the record which indicates Loewer ever requested a hearing on this issue.

■ Loewer also argues recoveries of attorney's fees on promissory notes are limited to 10% of the principal and interest, relying on Ark. Code Ann. § 4-56-101 (Repl. 1991). This section simply recognizes that a provision in a promissory note for the payment of a reasonable attorney's fee, not to exceed 10% of the amount of principal plus interest, may be enforceable as a contract of indemnity. We cannot interpret the Statute to limit the amount of attorney's fees which can be awarded in an action to recover on a promissory note. Arkansas Code Ann. § 16-22-308 (Supp. 1991) clearly authorizes attorney's fees to be awarded in an action such as this one.

The last objection regarding the award of attorney's fees is that the Trial Court lacked subject matter jurisdiction. To support this argument, Loewer relies on Ark. Code Ann. § 16-60-111 (1987) and argues venue was improper in Pulaski County

Circuit Court because he resided in St. Francis County.

█ It is important to note that venue and jurisdiction are distinct concepts. *Glad-o-Lac Co.* v. *Creekmore, Judge*, 230 Ark. 919, 327 S.W.2d 558 (1959). While jurisdiction may not be waived or created by consent of the parties, venue may be waived when a party enters an appearance. *Hargis* v. *Hargis*, 292 Ark. 487, 731 S.W.2d 198 (1987).

█ Although Loewer objected to venue in Pulaski County, in his answer, he asserted a permissive counterclaim under Ark. R. Civ. P. 13(b) (1992) and waived his venue objection. In *Arkansas Game & Fish Comm'n* v. *Lindsey*, 292 Ark. 314, 730 S.W.2d 474 (1987), we stated, "By interposing a permissive counterclaim, a party voluntarily asks the court for affirmative relief and thus should not be allowed objections based on personal inconvenience."

### 3. Discovery sanctions

Loewer's last point is that the Trial Court erred by refusing to impose sanctions against NBA based on the failure to produce the valuation letter, bill of sale, and promissory note until September 16, 1991, only eight days before trial.

On May 20, 1991, the Trial Court granted Loewer's motion to compel NBA to produce all documentation regarding the equipment leased from Interstate in December 1983. NBA informed the Court that all such documentation had been produced. Shortly before trial, plaintiff's exhibits six, seven, and eight were found in a safe deposit box at NBA. A loan services officer at NBA, Brenda Burks, testified she was checking the safe deposit box for collateral on an unrelated loan and found the documents. She further stated the documents were not on the inventory list for the safe deposit box.

██ We will not reverse a Trial Court's decision on imposing sanctions for discovery violations unless there has been an abuse of discretion. *Davasher* v. *State*, 308 Ark. 154, 823 S.W.2d 863 (1992). There was testimony before the Trial Court that NBA had repeatedly searched for the documents without success. Tullos stated he made diligent efforts to find the documents but did not find them. There was also testimony that the documents were located accidentally in a place where they

would not normally be found. In light of the evidence that NBA officials searched for the documents prior to trial and could not find them, we cannot say the Trial Court's refusal to impose sanctions was an abuse of discretion.

Affirmed.