PRECISION STEEL WAREHOUSE, INC. *v.* ANDERSON-MARTIN MACHINE CO.

92-1012 854 S.W.2d 321

Supreme Court of Arkansas
Opinion delivered May 24, 1993
[Supplemental Opinion on Denial of Rehearing July 12, 1993.]

*Dailey, West, Core, Coffman & Canfield*, by: *Robert W.*

*Bishop*, for appellant.

*Pryor, Barry, Smith, Karber & Alford*, by: *Gregory T. Karber*, for appellee.

JACK HOLT, JR., Chief Justice. Appellant is Precision Steel Warehouse, Inc. (PSW), an Illinois corporation which brokers steel between mills and manufacturers. Appellee, Anderson-Martin Machine Company (Anderson-Martin), is an Arkansas company engaged primarily in machining metal parts. In May and September 1990, respectively, Anderson-Martin placed two orders with PSW for a certain type of steel to be utilized in the making of a parachute part for its customer, U.S. Forgecraft (Forgecraft), who held contracts with the U.S. Department of Defense (DOD). Anderson-Martin bought the steel from PSW and in turn made pieces for sale to Forgecraft. The precise wording on the purchase orders sent to PSW was "CR carbon steel strips, half hard #2 temper, dull finish, sheared edges, flat, shear across the grain as we form this material. Certify to QQ-S-698 and send certs." This second phrase required that the steel comply with federal specification QQ-S-698 and that PSW send Anderson-Martin the steel mill certifications which showed the chemical makeup of the steel. There was no reference in the purchase order as to the particular chemical makeup of the steel.

Anderson-Martin received the first shipment of steel from PSW on August 1, 1990 without accompanying certification, processed it and sent some of its product to Forgecraft. On August 9, after several requests, PSW forwarded the steel shipment's certifications to Anderson-Martin. That same day, Anderson-Martin electronically sent the certifications to Forgecraft. The quality control manager at Forgecraft called Anderson-Martin that afternoon and informed Anderson-Martin that its product was unacceptable because it contained too much phosphorus and was outside the allowable phosphorus range for steel under specification QQ-S-698.

Anderson-Martin called PSW to verify the chemical composition of the steel shipment since the phosphorus level was unusually high. Some three and one-half months later, on November 19, 1990, PSW sent Anderson-Martin the original steel mill certifications PSW received from its supplier, LTV Steel Company, with the chemical analysis. Anderson-Martin

then compared the certifications it had first received from PSW with these original steel mill certifications from LTV and found that the phosphorous level of the steel shipment was indeed nonconforming. The certifications specified that the steel sent to Forgecraft had a phosphorus level of .128 percent while the maximum level allowed by government specification was .04 percent. Forgecraft rejected all the parts they had received from Anderson-Martin and were refunded their purchase money.

As a result, Anderson-Martin sued PSW for breach of warranty, breach of contract, and negligence in Sebastian County Circuit Court to recover $12,517.98, together with interest from the time on which damages were determinable and statutory attorneys' fees. The jury, by general verdict, awarded Anderson-Martin the sum of $12,517.67. The trial judge additionally awarded attorneys' fees in the amount of $2,500 to Anderson-Martin and costs. This appeal followed.

## MOTION FOR DIRECTED VERDICT

PSW first argues that the trial court should have granted its motion for a directed verdict made at the close of Anderson-Martin's evidence and again at the close of all the evidence because the only issue in this case was a question of law in that it involved the interpretation of the DOD specification, QQ-S-698, which is "federal law," and since Ark. R. Civ. P. 44.1 requires the court and not the jury to determine an issue concerning the law of any jurisdiction or governmental unit outside the state, the court erred in presenting this question to the jury when it was a question of law.

A motion for a directed verdict should be granted only if there is no substantial evidence to support the verdict. *Muskogee Bridge Co.* v. *Stansell*, 311 Ark. 113, 842 S.W.2d 15 (1992); *Bank of Malvern* v. *Dunklin*, 307 Ark. 127, 817 S.W.2d 873 (1991). Substantial evidence is defined as that which is of sufficient force and character to compel a conclusion one way or another; it must force or induce the mind to pass beyond suspicion or conjecture. *Loewer* v. *National Bank of Ark.*, 311 Ark. 354, 844 S.W.2d 329 (1992).

We recently summarized our standard of review for the denial of a directed verdict:

> [I]n addressing the issue of whether a directed verdict should have been granted, we must view the evidence in the light most favorable to the party against whom the verdict is sought and give it its highest probative value, taking into account all reasonable inferences deducible from it. Where the evidence is such that fair-minded people might have different conclusions, then a jury question is presented, and the directed verdict should be reversed.

*Lytle* v. *Wal-Mart Stores, Inc.*, 309 Ark. 139, 143, 827 S.W.2d 652, 654 (1992)(citing *Howard* v. *Hicks*, 304 Ark. 112, 113, 800 S.W.2d 706, 707 (1990)). *See Wingate Taylor-Maid Transp. Inc.* v. *Baker*, 310 Ark. 731, 840 S.W.2d 179 (1992); *Ciba-Geigy Corp.* v. *Alter*, 309 Ark. 426, 834 S.W.2d 136 (1992).

We cannot agree with PSW's rationale in asking the trial court to direct a verdict in its favor as a matter of law rather than submitting this case to the jury. First, since the specifications in question, QQ-S-698, are terms and conditions relating to certain government contracts and are not matters of "federal law," Ark. R. Civ. P. 44.1 does not apply. Also, Ark. R. Civ. P. 44.1 does not call for the "interpretation" of law but merely provides for notice and "determination" of foreign law. Secondly, the reference to "federal law" begs the issue, since we are not dealing with a question of law which the trial court should have determined, but factual matters relating to the construction of a contractual agreement between the parties in litigation which were properly submitted to the jury.

As a practical matter, this case boils down to two primary issues. First, was the contractual language contained in Anderson-Martin's purchase order sufficient in terms of custom and practice in the trade to provide PSW as a vendor of steel with sufficient information with which to meet the requirement of DOD's specifications contained in the order? Second, was PSW entitled to a directed verdict as there was insufficient evidence adduced at trial to support the jury's verdict favoring Anderson-Martin?

PSW argues that a particular, specified chemical composition was an option that Anderson-Martin should have indicated on its purchase order, and absent this indication, PSW had no duty to provide a certain composition.

PSW relied on Section 6.2 of QQ-S-698, entitled "Ordering Data," which states:

> *Purchasers should exercise any desired options offered herein, and procurement documents should specify the following:*
> (a) Title, number, and date of this specification.
> (b) Quality or temper required.
> (c) Whether killed steel is required.
> (d) *Chemical composition.*
> (e) Mechanical properties, if required.
> (f) If finish other than as hot rolled is required.
> (g) If other than No. 1 finish is required for cold rolled steel.

(Emphasis added.)

Section 6.2 (d), above, is cross-referenced to 3.2(d), which states:

> 3.2 Chemical composition. When chemical composition is specified (See 6.1 and 6.2), the composition shall be specified to maximum limits. However, if required it may be specified to minimum limits, ranges or to grade designation numbers (see 6.3). A ladle analysis of each heat of steel shall be furnished by the supplier.

In response, Anderson-Martin first argues that the evidence advanced at trial revealed the course of dealing, usage of the trade, and course of performance in the industry was such that a reference in its purchase order to QQ-S-698 had ·a certain, identifiable meaning to PSW, which made the issue at hand a jury question.

Tom Anderson of Anderson-Martin testified regarding how purchase orders with specifications are typically submitted. He said they simply refer to the specifications and do not specify a phosphorus level. He testified that typically certifications are sent to the buyer by the seller when the steel is shipped. However, in this instance Anderson-Martin had to repeatedly ask PSW for the certifications until they received them even though Anderson-Martin had begun to process the steel. Mr. Anderson testified that his customers who primarily sell to the Department of Defense must have the certifications because the government

requires that steel be traceable all the way back to the steel mill, and this is done by the seller attaching the certifications to the orders relating DOD specifications. He also testified that, in doing business, he looked for the term "QQ-S-698" and not for any chemical breakdown on the documents he received in the regular course of business. Finally, he told the jury that Forgecraft's purchase orders sent to Anderson-Martin only stated "QQ-S-698" and did not specify a chemical composition and that it was not necessary for him to do so in ordering from PSW.

Tim Matlock, director of quality control at Forgecraft, testified that it was the custom in the steel manufacturing industry to place and fill orders for government contracts by government specifications, such as QQ-S-698, without specified chemical composition. In addition, Mr. Matlock testified about an independent test of the unacceptable steel which he requested that American Interplex Corporation Laboratories perform. This outside test was a mandatory requirement for DOD for parties contracting with the military. This test revealed that the steel had phosphorus levels of .12 and .19 percent and thus was rephosphorized steel which is unacceptable under QQ-S-698. Matlock also discussed Federal Standard 66 of QQ-S-698 which specifically addresses chemical composition. It states that rephosphorized steel is not certifiable because it becomes brittle. Finally, he testified that while he was aware that Forgecraft did not make any chemical designation in its order to Anderson-Martin, giving chemical designations in purchase orders was not the usual method in the industry where government specifications are concerned.

In its defense, PSW called Steven Kesch, a metallurgical engineer with LTV Steel, as an expert in steel specification. He testified that the steel sent to Anderson-Martin met the hardness ranges of QQ-S-698 and that QQ-S-698 does not set a mandatory chemical composition for any quality steel but instead a buyer can list the particular chemistry they desire on their order. Mr. Kesch testified that rephosphorized steel meets the requirements of QQ-S-698, that he rarely sees orders to QQ-S-698 that mention chemical composition, and that the reason chemical composition is rarely specified is that the quality descriptions are based on in-use, so the steel is ordered for an in-use, and the

quality description is usually sufficient to define that steel for its future use.

In rebuttal, Tom Anderson testified that the steel sold to Anderson-Martin by PSW exceeded the maximum allowable phosphorus level according to PSW's own chemical analysis. In support of his testimony, he made reference to the 50th Anniversary Catalog from Precision Steel Warehouse. The catalog contained a table which gave the standard chemical analysis specifications for the type of steel at issue here as .04 percent maximum level of phosphorus.

We have long held that where the terms of a contract are ambiguous and capable of having more than one meaning, extrinsic evidence of custom and usage is permitted to establish the intent of the parties, and the meaning of the contract then becomes a question of fact. *First Nat'l Bank of Crossett* v. *Griffin*, 310 Ark. 164, 832 S.W.2d 817 (1992); *Duvall* v. *Massachusetts Indemn. & Life Ins. Co.*, 295 Ark. 412, 748 S.W.2d 650 (1988); *Black & Black Oil Co.* v. *Guy R. Smith Drilling Co.*, 298 Ark. 487, 712 S.W.2d 901 (1986); *Venturi, Inc.* v. *Adkisson*, 261 Ark. 855, 552 S.W.2d 643 (1977); *Gibson* v. *Heiman*, 261 Ark. 236, 547 S.W.2d 111 (1977); *C & A Constr. Co., Inc.* v. *Benning Constr. Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974); *Fort Smith Appliance & Serv. Co.* v. *Smith*, 218 Ark. 411, 236 S.W.2d 583 (1951). *See also Hoover* v. *Arkoma Prod. Co.*, 29 Ark. App. 238, 780 S.W.2d 585 (1989); *Floyd* v. *Otter Creek Homeowners Assoc.*, 23 Ark. App. 31, 742 S.W.2d 120 (1988). Since witnesses for PSW and Anderson-Martin sharply disagreed as to the meaning of the term "QQ-S-698" and its effect on the purchase order, the extrinsic evidence of custom and usage is admissible and it becomes a question of fact which the trial court properly submitted to the jury.

Course of dealing or usage of trade that explains or supplements a contract is considered competent evidence of the parties' intent and can become a part of a contract. Ark. Code Ann. § 4-2-202(a) and Comment 2 (Repl. 1991). Course of dealing refers to the conduct between the parties prior to the agreement. § 4-1-205, Comment 2. Usage in trade is a factor in reaching the commercial meaning of an agreement in which the parties have made. § 4-1-205, Comment 4. If the usage was

known to both parties or so widespread in the industry that the contract would be presumed to have been made with reference to it, it becomes a part of the agreement. *Venturi, supra; Sharpensteen* v. *Pearce,* 219 Ark. 916, 245 S.W.2d 385 (1952); *Ben F. Levis* v. *Collins,* 215 Ark. 172, 219 S.W.2d 762 (1949). Both course of dealing and usage can be used to explain or supplement expressed terms that are not inconsistent with the contract. § 4-2-202(a).

The Uniform Commercial Code section on course of dealing and usage of trade states:

(1) A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

(2) A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a written trade code or similar writing the interpretation of the writing is for the court.

(3) A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement.

(4) The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade and course of dealing controls usage of trade.

(5) An applicable usage of trade in the place where any part of performance is to occur shall be used in interpreting the agreement as to that part of the performance.

(6) Evidence of a relevant usage of trade offered by one party is not admissible unless and until he has given the other party such notice as the court finds sufficient to prevent unfair surprise to the latter.

Ark. Code Ann. § 4-1-205 (1991).

Viewing the evidence in the light most favorable to Anderson-Martin and giving it its highest probative value and taking into account all reasonable inferences deducible from it as we must do, we hold that fair-minded people might have different conclusions and a jury question was properly presented and the evidence admitted at trial was sufficient to support the jury's verdict.

## DEFENDANT'S REQUESTED INSTRUCTION NO. 8

Precision Steel requested the following Instruction No. 8:

You are instructed that Anderson-Martin Machine Company is barred from any remedy unless you find that it notified Precision Steel Warehouse, Inc. of any breach within a reasonable time after it discovered or should have discovered such breach.

The trial court wanted to change "is barred" to "may be barred" because whether Anderson-Martin gave PSW notice was a disputed fact for the jury to determine, and our rule is that the assumption of a disputed fact in a jury instruction is prejudicial error. *Weatherford* v. *Wommack*, 298 Ark. 274, 766 S.W.2d 922 (1989; *Porter* v. *Lincoln*, 282 Ark. 258, 668 S.W.2d 11 (1984); *Thiel* v. *Dove*, 229 Ark. 601, 317 S.W.2d 121 (1958). PSW argues that the unmodified version is applicable law, taken directly from Ark. Code Ann. § 4-2-607(3)(a), and therefore should have been read to the jury.

We need not review PSW's argument on the merits because PSW elected to withdraw the instruction entirely and it was not submitted in any form, thus making it a non-issue since PSW failed to comply with the requirements of Ark. R. Civ. P. 51, which states, in part:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before or at the time the instruction is given, stating distinctly the

matter to which he objects and the grounds of his objection, and *no party may assign as error the failure to instruct on any issue unless such party has submitted a proposed instruction on that issue.*

(Emphasis added.)

 We recently held in *Vickers* v. *State*, 313 Ark. 64, 852 S.W.2d 787 (1993) that for a party to preserve for appeal any objection to the trial court's failure to give an instruction, that party must make a proffer of the instruction to the judge and make his objections. Simply giving a set of instructions to the trial judge prior to trial is not sufficient to allow the appellate court to address the propriety of appellant's proposed instructions. *See also Viking Ins. Co.* v. *Jester*, 310 Ark. 317, 836 S.W.2d 317 (1992); *City of Little Rock* v. *Weber*, 298 Ark. 382, 767 S.W.2d 529 (1989); *Peoples Bank & Trust Co.* v. *Wallace*, 290 Ark. 589, 721 S.W.2d 659 (1986); *Wallace* v. *Dustin*, 284 Ark. 318, 681 S.W.2d 375 (1984).

## PLAINTIFF'S REQUESTED INSTRUCTION NO. 7

PSE next argues that the trial court abused its discretion by giving the following instruction:

> You are instructed where the buyer has accepted goods and then given notification that they are nonconforming, the buyer may recover as damages for the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

PSW's attorney stated, "We object because that [instruction] does not instruct the Jury how they should calculate damages or what the measure of damages is. It merely allows them the freedom to award any amount. I feel that is not in accord with the other instructions given by the Court." On appeal, PSW claims the words "which is reasonable" are too abstract and therefore error occurred since the jury had a "free rein" to determine whatever amount damages could be.

To the contrary, the wording of the instruction was derived directly from Ark. Code Ann. § 4-2-714 (1) (1991), a part of our Uniform Commercial Code, which reads:

> Where the buyer has accepted goods and given

notification. . .he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

■ Arkansas R. Civ. P. 51 requires that "[a] mere general objection shall not be sufficient to obtain appellate review of the trial court's action relating to instruction to the jury except as to an instruction directing a verdict or the court's action in declining to do so." We have considered an attorney's similar objection to a jury instruction in *Chandler & Ramsey* v. *Kirkpatrick*, 270 Ark. 74, 603 S.W.2d 406 (1980) and held it was not specific enough under Ark. R. Civ. P. 51 to preserve the issue for appeal:

> Third, Chandler's counsel made only a general objection to the court's instruction on the measure of damages, saying that "it did not set out the proper measure of damages for the case at bar." Such a broad statement did not tell the trial court exactly why the instruction was wrong and therefore was not sufficiently specific to present any question for review. Ark. R. Civ. P. 51 (1979).

*Id.* at 77, 603 S.W.2d at 407. *See also Hess* v. *Treece*, 286 Ark. 434, 693 S.W.2d 792 (1985); *Carroll-Boone Water Dist.* v. *M & P. Equip. Co.*, 280 Ark. 560, 661 S.W.2d 345 (1984).

■ Since Anderson-Martin failed to preserve this issue for appeal, we need not address it.

## INDEPENDENT CHEMICAL ANALYSIS

Plaintiff's Exhibit No. 14 was the test report prepared by American Interplex Corp. Laboratories for Forgecraft giving an independent chemical analysis of the steel at issue here. PSW objected to its introduction on the basis that it was hearsay to which Anderson-Martin replied that it was a business record admissible under the exception found at Ark. R. Evid. 803(6).

Ark. R. Evid. 803(6) reads:

> Records of regularly conducted business activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a

regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trust worthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

PSW argues that Plaintiff's Exhibit No. 14 was not a document kept in the course of a regularly conducted business activity since it was a test done to confirm a suspected problem with the steel Anderson-Martin sent Forgecraft. The record reveals that this report was indeed a record acquired and maintained by Forgecraft in the regular course of business since the government required an independent test of the steel used to fulfill military contracts by the purchasing parties.

Finally, there was no prejudice to PSW by the introduction of this document since the amount of phosphorus in the steel was not at issue. The chemical composition was not in dispute and was established by other evidence. We will not reverse for error that does not result in prejudice. *Robinson* v. *Abbott*, 292 Ark. 630, 731 S.W.2d 782 (1987).

## NONEXPERT TESTIMONY

PSW finally argues that the trial court erred in allowing Tim Matlock to testify about Exhibit No. 14, the test report previously discussed. PSW argues that this was error since Mr. Matlock was not an expert on metallurgy.

We have established above that Exhibit No. 14 was a record kept in the regular course of business. Mr. Matlock was its custodian and was duly qualified as a quality control expert. He did not testify about anything outside his expertise but only about the contents of the report, for which no expertise was required. He testified that the chemical analysis therein reflected levels of phosphorus that exceeded QQ-S-698. As a quality control expert, this was certainly within his ambit.

Again, PSW fails to show how this prejudiced it in any way, so we can find no error on this point. *Id.*

## ATTORNEY'S FEES

 After this appeal was lodged with our court and prior to oral argument, Anderson-Martin filed a motion for additional attorney's fees of $1,900.00 and costs of $208.94 pursuant to Ark. Code Ann. § 16-22-308 (Supp. 1991). We deny that motion since we have held that Ark. Code Ann. § 16-22-308 (Supp. 1991) is not applicable to attorney's fees and costs on appeal. *Mosley Mach. Co., Inc.* v. *Gray Supply Co.*, 310 Ark. 448, 837 S.W.2d 462 (1992); *University Hosp.* v. *Undernehr*, 307 Ark. 445, 821 S.W.2d 27 (1991).

For all the foregoing reasons, we affirm the trial court's decision and deny the motion for attorney's fees and costs.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
### JULY 12, 1993
856 S.W.2d 306

1. APPEAL & ERROR — REHEARING — REARGUMENT OF POINTS MADE ON APPEAL PROHIBITED. — Mere reargument of points already made on appeal is prohibited in a petition for rehearing by Ark. Sup. Ct. R. 2-3(g).
2. TRIAL — JURY INSTRUCTIONS — INSTRUCTIONS DO NOT CONFORM TO AMI — WHEN PROPER TO USE. — When instructions are requested which do not conform to AMI, they should be given only when the trial judge finds the AMI instructions do not contain an essential instruction or do not accurately state the law applicable to the case, and it is not error for the trial court to refuse to give a non-AMI jury instruction if the other instructions given covered the issue.
3. TRIAL — JURY INSTRUCTIONS — ASSUMPTION OF DISPUTED FACT — ERROR. — The assumption of a disputed fact in a jury instruction is prejudicial error.

4. TRIAL — JURY INSTRUCTION — MATTER COVERED BY INSTRUC-
TIONS GIVEN — NO ERROR TO REFUSE PROFERRED INSTRUCTION. —
Where taken together, the instructions given, including Court's
Instruction No. 8A, instructed the jury that a buyer must give
notice to a seller upon breach of a contract to recover damages,
which is precisely the substance of the instruction petitioner
proffered without the binding language; therefore the trial court did
not abuse its discretion in refusing petitioner's proffered
instruction.

Petition for Rehearing denied.

*Daily, West Core, Coffman & Canfield*, by: *Robert W.
Bishop*, for petitioner.

*Pryor, Barry, Smith, Karber & Alford*, by: *Gregory T.
Karber*, for respondent.

JACK HOLT, JR., Chief Justice. Precision Steel Warehouse,
Inc. (PSW) has filed a petition for rehearing of our decision in
*Precision Steel Warehouse, Inc.* v. *Anderson-Martin Mach. Co.*,
313 Ark. 258, 854 S.W.2d 321 (1993).

PSW makes three arguments in its petition for rehear-
ing, only one of which is not merely a reargument of points
already made as prohibited by Ark. Sup. Ct. R. 2-3(g) — the
tender of PSW's Proposed Instruction No. 8 which was rejected
by the trial court. The appellee in its original brief stated "that
PSW had elected to withdraw the instruction entirely" and it was
not therefore submitted in any form. Appellee's Br. 10. We
mistakenly relied on this statement and refused to consider this
point on appeal. We were wrong. In examining the record of the
trial, we find that PSW's Proposed Instruction No. 8 was
tendered to the trial court and an appropriate objection was made
as to its exclusion, the net result of which is that our holding in this
regard was in error.

Inasmuch as the issue was properly preserved for appeal, we
now examine this requested instruction for a determination as to
whether or not the trial court committed prejudicial error in

refusing to accept this instruction and charge the jury with its contents. In doing so, we hold the trial court was not in error.

■ The wording of the instruction PSW sought to have read to the jury was:

> You are instructed that Anderson-Martin Machine Company is barred from any remedy unless you find that it notified Precision Steel Warehouse, Inc. of any breach within a reasonable time after it discovered or should have discovered such breach.

Inasmuch as this jury instruction sought by PSW does not conform to the Arkansas Model Jury Instructions (AMI), we examine this proposed instruction in light of our Per Curiam issued April 19, 1965, found at AMI Civ. 3d, p. VII, which requires AMI to be used unless the trial judge finds that the AMI does not accurately state the law, and if AMI are refused, the trial judge is to state his reasons for refusing AMI. In other words, when instructions are requested which do not conform to AMI, they should be given only when the trial judge finds the AMI instructions do not contain an essential instruction or do not accurately state the law applicable to the case. *Smith* v. *Stevens,* 313 Ark. 534 (June 21, 1993); *Newman* v. *Crawford Constr. Co.,* 303 Ark. 641, 799 S.W.2d 531 (1990); *Ventress* v. *State,* 303 Ark. 194, 794 S.W.2d 619 (1990). Furthermore, it is not error for the trial court to refuse to give a non-AMI jury instruction if the other instructions given covered the issue. *Cavin* v. *State,* 313 Ark. 238, 855 S.W.2d 285 (1993); *Williams* v. *State,* 304 Ark. 279, 801 S.W.2d 296 (1990); *Henderson* v. *State,* 284 Ark. 493, 684 S.W.2d 231 (1985).

■ The trial court refused the requested instruction on the basis that PSW refused to allow the trial court to modify the instruction by changing the "is" to "may be," and the court felt that using the word "is" made it a binding instruction. The assumption of a disputed fact in a jury instruction is prejudicial error. *Weatherford* v. *Wommack,* 298 Ark. 274, 766 S.W.2d 922 (1989); *Porter* v. *Lincoln,* 282 Ark. 258, 668 S.W.2d 11 (1984); *Thiel* v. *Dove,* 229 Ark. 601, 317 S.W.2d 121 (1958).

PSW argues that the wording of the proposed instruction is taken directly from Ark. Code Ann. § 4-2-607(3)(a) (Repl. 1991), and the court erred by failing to instruct the jury on a statute applicable to the case. That code section states:

> Where a tender has been accepted. . .[t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.

Ark. Code Ann. § 4-2-607(3)(a) (Repl. 1991).

In examining the instruction given by the trial court to the jury, we cannot say that the jury received inadequate instruction on the requirement that a buyer give notice to a breaching seller. In addition to the general instructions contained in AMI 101-103, 202 and 2301, the record reflects that the jury was instructed on breach of express warranty, breach of implied warranty for a particular purpose, and breach of contract.

The Court's Instructions No. 5 and 6 covered breach of express warranty and contained a specific requirement that mandated notice even though the similar AMI 1011 contains no wording requiring notice. Instruction No. 7 covered breach of implied warranty for a particular purpose and made no mention of notice, and none was contained in the similar AMI 1010. Instruction No. 8 covered consequential damages for breach of contract but made no mention of notice; Instruction No. 9 covered limitation of damages to repair or replacement; and Instruction No. 10 addressed an exclusive remedy clause.

Finally, Instruction No. 8A operated to instruct the jury about notice required by a buyer to a breaching seller:

> You are instructed that where the Buyer has accepted goods and then *given notification that they are non-conforming*, the Buyer may recover as damages for the loss resulting in the ordinary course of events from Seller's breach as determined in any manner which is reasonable.

(Emphasis added.)

This is precisely the substance of the instruction PSW desired to be given to the jury in Defendant's Requested Instruction No. 8 without binding language. Therefore, we cannot say that the trial court abused its discretion in denying PSW's requested instruction.

Taken together, the instructions given, including Court's Instruction No. 8A, instructed the jury that a buyer must give notice to a seller upon breach of a contract to recover damages. We have held that it is not error to refuse an instruction if the instructions given embrace the instruction disallowed. *Barnes, Quinn, Flake & Anderson* v. *Rankins,* 312 Ark. 240, 848 S.W.2d 924 (1993); *Newman* v. *Crawford Constr. Co., supra.*

Accordingly, the petition for rehearing is denied.