In re Estate of LESTER UPCHURCH, Deceased.
PAUL V. WRIGHT, Appellee, v. LILLIE MAI
UPCHURCH, Administratrix of the Estate of
Lester Upchurch, Deceased.—466 S.W.2d 886.

Middle Section. October 30, 1970.

Certiorari Denied by Supreme Court April 5, 1971

Wm. C. Wilson, Ambrose, Wilson & Lockridge, Knoxville, for appellee.

Gail P. Pigg, Nashville, for appellant.

SHRIVER, P.J. (M.S.). This case involves the claim of Paul V. Wright against the Estate of Lester Upchurch, deceased, which was heard before the Honorable Shelton Luton, Probate Judge of Davidson County, which hearing resulted in the allowance of the claim and a decree in the amount of $7,980.73 against the Estate of Lester Upchurch, deceased.

From said decree, the Administratrix appealed and has assigned errors.

### ASSIGNMENTS OF ERROR

There are five assignments of error, as follows:

"1. The Trial Court erred in finding that the claim was valid, as the document relied on as the repurchase agreement did not itself constitute a contract, but failed for lack of certainty. By its own terms, it was to be made a part of some other contract, (Exhibit #3 to claimant's testimony) yet it was not tied to any other contract by the evidence.

2. The Trial Court erred in finding on behalf of the claimant as the installment sales contract on which it relied as the original contract prohibits modification unless in writing, signed by both buyer and seller. Tennessee Code Annotated, sec. 47-2-209(2) sets forth the rule that a signed agreement which excludes modification except by a signed writing cannot be otherwise modified.

3. Even if the document on which the claim is based were found to be a valid and binding modification, sufficiently tied to an original agreement, the Court erred in allowing the claim, as that document itself requires performance by claimant of certain conditions, which, according to his own testimony, were never met. (B.E., pp. 35, 36, 39)

4. The Trial Court erred in allowing claimant to testify as to the signature of decedent on the instrument on which the claim is based. (B.E., pp. 13-16)

5. The Trial Court erred in allowing claimant's wife, who is also claimant's bookkeeper, to testify as regards the contract between claimant and the decedent. While not a technical party to the lawsuit, she is a 'party' within the meaning of Tennessee Code Annotated, sec. 24-105, and not competent to testify as to transactions with decedent.''

## THE FACTS

Lillie Mai Upchurch, wife of decedent, Lester Upchurch, was appointed Administratrix C.T.A. of his estate, Letters of Administration being issued to her on June 4, 1968.

Claimant, Paul V. Wright, in due course, filed his claim against the estate in the amount of $10,726.49 based on a written agreement between the parties whereby it is insisted that decedent agreed to repurchase five Polar Chips Slush Freezers at the original price of $12,520.00, less gross profits on the machines for one year.

The Administratrix filed exceptions to the claim, denying that the estate is indebted to the claimant in any amount and denying that the deceased entered into a contract to repurchase the machines as alleged in the claim.

The record shows that in October, 1967, Paul V. Wright purchased five Polar Chips PC-22 Slush Freezers from Lester Upchurch, d/b/a Polar Equipment Company, at a price of $2,195.00 each. These freezers are designed to crush ice and provide several varieties of syrup to be mixed with the ice and sold in two sizes of cups, one for ten cents and the other for twenty cents.

It is insisted by the claimant that there was an agreement that the seller would place the machines in stores or other designated places of business and would service them mechanically while the purchaser would keep the machines equipped with cups and syrup and otherwise attend to the operation of them.

It is further insisted that it was a part of the agreement that if the purchaser, Mr. Wright, was not satisfied with the operation of the machines at the end of one year, the seller, Mr. Upchurch, would repurchase them for the original purchase price, less the gross profit earned by the machines during the year of operation

The record shows that the claimant made a down payment on the five machines of $2,200.00 and signed a conditional sales contract to secure the balance of the purchase price. The machines were delivered shortly after October 31, 1967 and were installed in certain stores by Mr. William D. Pearson, a representative of the seller.

Mr. Upchurch died in May, 1968 before the end of the year of operation of the machines, and, at the expiration of one year, the claimant, Mr. Wright, being dissatisfied with the operation of the machines, made demand on the Administratrix to repurchase them, which demand was refused. Hence, the claim and this litigation.

As is pointed out in the Memorandum Opinion of Judge Luton, which is made a part of the record, Claimant's Exhibit No. 1 is a carbon copy of an Installment Sales Contract dated October 18, 1967, signed by the claimant as buyer, with the name of the seller, Polar Equipment Company, typed thereon. The contract includes five Polar Chips Slush Freezers at a unit price of $2,195.00 each, for a total price of $10,975.00, and shows a cash payment of $2,200.00, listing the unpaid balance as $8,775.00, to which is added insurance and recording fees of $213.40, plus a financing charge of $1,331.60, and provides that the balance due on the contract be paid in twenty-four consecutive monthly installments of $430.00 each, beginning on November 30, 1967.

On this printed form there is a provision to the effect that the document constitutes the entire contract and no waiver or modification will be valid unless in writing and signed by the buyer and seller.

Claimant's Exhibit No. 2 is a check dated October 20, 1967, drawn on the Hamilton National Bank of Knoxville,

Tennessee, made payable to the order of Polar Equipment Company in the amount of $2,200.00, signed by Paul V. Wright, and has a notation written thereon: "For deposit on five Polar Slush Machines".

Claimant's Exhibit No. 3 is a letter on the letterhead of Polar Equipment Company of Tennessee, bearing the legend printed thereon: "Mr. Slushy, 122 Western Plaza, Knoxville, Tennessee, 37919—East Tennessee Headquarters". This letter, dated October 30, 1967, addressed to the claimant and signed by Lester Upchurch, is as follows:

"Mr. Paul Wright
715 Forest View Rd, N.W.
Knoxville, Tennessee

In consideration of your purchase of the Polar Chips PC-22 Slush Freezer, Polar Equipment Company of East Tennessee is making this letter a part of our contract with you.

One year from the date of purchase, we will buy back the above mentioned machine(s) if you find the operation of said machine(s) unsatisfactory in any way.

The price to be paid by Polar Equipment Company of East Tennessee will be the original purchase prices less all of the gross profit earned by the machine(s) during this year of operation. Gross profit is defined as the difference between the price of the cups and syrup paid by you and the amount paid to you by the operator of the machine(s).

In order to exercise this agreement, it will be necessary that you provide Polar Equipment Company of East Tennessee with accurate records including invoices for

all supplies purchased by you and sold to the operator of said machine.

In addition, the machine(s) must be kept located in accordance with the judgment of Polar Equipment Company of East Tennessee and operated in a business like manner.

No other warranties expressed or implied except the manufacturer's equipment guarantee shall be construed to be a part of the agreement between Polar Equipment Company of East Tennessee and the above named purchaser.

/s/ Lester Upchurch
—————————————
Lester Upchurch''

Claimant's Collective Exhibit No. 4 consists of sales tickets showing sales by claimant to merchants in whose places of business he had placed said machines. Exhibits Nos. 5 and 6 are further invoices and sales tickets, while Exhibit No. 7 is a copy of a letter sent by claimant to counsel for the estate of decedent, dated July 17, 1968, making demand for the repurchase of the machines, which later was followed up by another marked Exhibit No. 8.

Exhibit No. 9 is a letter from the solicitor of the estate of the deceased, addressed to the claimant, to the effect that she was advising Mrs. Upchurch not to honor the claim.

Exhibits Nos. 10 and 11 have to do with purchases of supplies and sales slips in connection with the operation of the machines.

The claimant testified to the effect that he bought the machines from Mr. Upchurch with the distinct under-

standing, orally and, subsequently, in writing, as attested by the letter of October 30, 1967, Claimant's Exhibit No. 3, supra, that if claimant was not satisfied with the operation of the machines at the end of one year, the seller would repurchase them for the original purchase price, less the gross profit earned by the machines during the year of operation.

Mrs. Wright, wife of the claimant, testified that she had met the deceased in October, 1967, and heard him tell her husband that the price of the machines was $2,195.00 each and that he would buy back the machines at the end of a year if they did not produce.

It was agreed by counsel that invoices for purchases and sales from November 1, 1968 up to the date of the hearing would be furnished as Exhibit No. 11 to the claimant's evidence.

In contesting the claim, Mrs. Upchurch, widow of the deceased and Administratrix of his estate, testified that she did not see her husband sign the letter dated October 30, 1967 (Exhibit No. 3 to Claimant's testimony), and that she did not have anything to do with her husband's business and had not received any records from the claimant.

The deposition of Lendley Best was read and had to do with the installation and servicing of the machines by Mr. Pearson who represented the seller and noted the fact that at least one of the machines was not satisfactory. He indicated that there was something wrong with the machines each time he saw them and, in fact, said: "It's not a very good machine".

The deposition of Donald G. Lambert was read on behalf of the claimant. He testified that he was the

Assistant Cashier of Park National Bank; that there was an account at the bank in the name of "Polar Equipment Company", there being two signatures for withdrawals from said account, one being that of the deceased, Mr. Upchurch, and the other, that of his wife. He identified the signature of Lester Upchurch—saw him sign the card. Over objection of counsel for the Administratrix, he testified that the signature on the letter of October 30, 1967, (Exhibit No. 3) was, in his opinion, that of the deceased. He also testified that he knew there was a repurchase agreement but had not seen it prior to the trial.

## OUR CONCLUSIONS

As will be noted from the Assignments of Error, supra, it is insisted by counsel for the Administratrix that the letter, Exhibit No. 3, signed "Lester Upchurch", and which states:

"In consideration of your purchase of the Polar Chips PC-22 Slush Freezer, Polar Equipment Company of East Tennessee is making this letter a part of our contract with you,"

is not so identified and connected with the other instrument, Claimant's Exhibit No. 1, as to become a part of said contract, and is, therefore, not a valid and binding agreement. It is the further insistence of counsel for the Administratrix that the repurchase clause in the letter, which is the foundation of the claim of Mr. Wright, fails to identify the machines to which it refers and is, therefore, fatally defective as a binding contract.

Another insistence of counsel for the Administratrix is that, since Mr. Upchurch is deceased, the oral testi-

mony of the claimant, as admitted into the record by the Trial Judge, constituted error because of its conflict with the "Dead Man's Statute". She also objects to the testimony of the claimant's wife, who was his bookkeeper, to the effect that she heard a conversation between her husband and the deceased regarding the repurchase of the machines and insists that, because of her interest in the matter as the wife of the claimant, said testimony is inadmissible.

As to the foregoing insistence of appellant, we refer to Fuqua and Hartman, Ex'rs v. Dinwiddie, 74 Tenn. (6 Lea) 644, where it was held:

> "In an action against an executor, it is only *parties* who are excluded from testifying as to transactions with or statements by the testator; persons *not parties* may thus testify although interested in the result."

Also see Minnis v. Abrams, 105 Tenn. 662, 58 S.W. 645, where it was held:

> "In an action against an administrator, the plaintiff is competent to prove his possession of a letter to himself from the deceased, which he offers in evidence, and that it is in the handwriting of the deceased. These facts do not constitute 'transactions with' or 'statements by' the deceased, that the surviving party is forbidden by the statute to testify to."

Thus, while oral testimony of plaintiff as to conversations with the deceased are, of course, incompetent, his identification of deceased's signature is competent and that of the wife, above referred to, is also admissible.

Hence, this assignment is overruled.

■ Counsel for the Administratrix further insists that if the letter (Exhibit No. 3) is construed as a modification of the original agreement, it must possess all of the elements necessary to form a contract and that it fails in this respect for indefiniteness as to the subject matter itself. She says that a modification is a change which introduces new elements into the details of the contract, but leaves the general purpose and effect undisturbed, and, in order to be valid and binding, it must be identified with the agreement that it purports to modify and that, in this respect, the letter, Exhibit No. 3, is totally lacking.

The Trial Judge deals with these questions in his Memorandum Opinion as follows:

"Claimant contends that he is entitled to return the machines and recover the amount of $12,520 less the gross profit through one year of operation. He further offers to take into consideration gross profit realized from the operation of the machines from November 1, 1968 through May 31, 1969, amounting to $373.98.

The contention of the estate that no original contract was made is not tenable. There is no denial of the payment of the $2,200 to the deceased or of the delivery of the machines. The deceased serviced the machines after delivery. There is no evidence that the deceased ever questioned the existence of the original contract or its validity.

As to the contention that the letter dated October 30, 1968, has no force or effect, there is testimony that the deceased made the sort of proposition contained in said letter at the time he talked to claimant about the purchase of the machines. The Court believes that the deceased signed this letter. The Court is of the

opinion that this letter must be considered as either a part of the original contract or a binding modification thereof.

A case strikingly similar to the case at bar is the case of Capitan Bowling Center, Inc., v. Bowling Sales Co., 361 S.W.2d 399. In that case, the Court of Civil Appeals of Texas held that an agreement that if the buyers were not completely satisfied with equipment or its operation during a stated period the equipment would be picked up by the seller and all monies paid refunded, if executed subsequently to the primary contract would be considered a modification of the primary or original contract, while, if executed contemporaneously with the other contract, constituted a part of that contract.

In line with said Texas case, it appears to the Court here that a contract was duly and properly executed between the claimant and the decedent for the sale of the five machines aforementioned and that the letter written on October 30, 1967, regarding a repurchase of the machines was either a part of the original contract or a subsequently made mutual modification of the contract which became as binding upon the parties as did the original contract.

Therefore, the Court concludes that the claim must be recognized as a valid claim against this estate. The proof is not clear as to how much was paid on the contract. Therefore, if counsel for the parties cannot ascertain from competent proof such as receipts or canceled checks and therefrom agree exactly how much money was paid pursuant to the contract, the matter will have to be referred to the Clerk (Probate Master)

in order to ascertain the amount paid by claimant on the contract and the amount of gross profit earned by the machines over the entire two year period. The amount of the claim allowed will be in accordance with the agreement, that is, the machines are to be returned and the amount of the claim will be the amount actually paid on the purchase price less all of the gross profit earned by the machines during the entire time of their operation up to the date of their return to the estate. Gross profit is as defined in the letter dated October 30, 1967, constituting Claimant's Exhibit No. 3.

Decree to be prepared by counsel for the claimant in accordance with this memorandum opinion.

This October 24, 1969.

/s/ Shelton Luton
JUDGE"

The final decree provides as follows:-

"It is further ordered that the claimant may transfer to the Administratrix the five Mr. Slushy machines and thereupon shall be paid the total purchase price thereof amounting to $10,975.00 less the gross profits received by claimant from the operation of said machines from the date of the purchase thereof in October, 1967 to October 28, 1969, which the parties agree is the sum of $2,980.73.

The claim is therefore allowed in the sum of $7,980.73. The costs incident to the filing and determination of the claim are adjudged against the estate."

Attention is called to Section 47-1-201, T.C.A., comprising "General Definitions" as part of the Uniform

Commercial Code. Subsection (3) of said section is as follows:

"(3) 'Agreement' means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in chapters 1 through 9 of this title (secs. 47-1-205 and 47-2-208). Whether an agreement has legal consequences is determined by the provisions of chapters 1 through 9 of this title, if applicable; otherwise by the law of contracts (sec. 47-1-103). (Compare 'Contract'.)"

Subsection (11) is as follows:

"(11) 'Contract' means the total legal obligation which results from the parties' agreement as affected by chapters 1 through 9 of this title and any other applicable rules of law. (Compare 'Agreement'.)"

In *comments* under Sec. 47-1-201(39) we find the following:

"The inclusion of authentication in the definition of 'signed' is to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. * * * The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing."

Attention is also directed to Section 47-2-202 of the Uniform Commercial Code which provides that the terms with respect to which confirmatory memoranda of the parties agree as the final expression of their agreement

may not be contradicted by evidence of any prior agreement or by a contemporaneous oral agreement, but may be explained or supplemented

"(a) by course of dealing or usage of trade (sec. 47-1-205) or by course of performance (sec. 47-2-208; and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement. [Acts 1963, ch. 81, sec. 1 (2-202).]"

Under Uniform Sales of Goods Act, Chapter 12, Vol. 8, T.C.A., we find at Section 47-1203 entitled "Formalities of Contract or Sale", a provision to the effect that, subject to the provisions of this chapter, a contract to sell or a sale may be made in writing or by word of mouth, or partly in writing and partly by word of mouth, or may be inferred from the conduct of the parties. Also Section 47-1271 provides that under a contract to sell, same may be varied by express agreement or by the course of dealing between the parties, etc.

As to appellant's insistence that claimant failed to comply with necessary conditions of the contract in that he did not supply invoices of all supplies purchased and sold to the operator of each machine, it is to be noted that claimant's letter of July 17, 1968 to appellant's attorney offered to furnish exact figures, etc., but the claim was definitely denied.

As was said in Lazarov v. Nunnally, 188 Tenn. 145, 217 S.W.2d 11:

"(5) 'If one party to a contract voluntarily disables himself from performing his part of the contract, the

other party has an immediate right of action for the breach.' Brady v. Oliver, 125 Tenn. 595, 612, 147 S.W. 1135, 1139, 41 L.R.A.,N.S., 60, Ann.Cas. 1913C, 376.

\*     \*     \*     \*     \*     \*

(7) 'That a cause of action arises when the acts and conduct of one party evince an intention no longer to be bound by the contract.' Church of Christ Home for Aged, Inc., v. Nashville Trust Co., 184 Tenn. 629, 642, 202 S.W.2d 178, 183.''

In American Texile Machinery Corp. v. United States, 6 Cir., 220 F.2d 584, it was said:

"Appellee's contention that there was a default in the tender of payments after March 23, 1951 has no merit. Further performance, or tender of further performance, was not required after that date, since at that time appellee had given unequivocal notice that it had rescinded the contract. No tender is necessary when a contract has been definitely repudiated by the other party."

Thus, this assignment must be overruled.

From a careful consideration of the record in this case, we are convinced that the Trial Judge reached the right conclusion and that all assignments of error must be overruled and the judgment below affirmed.

Puryear and Todd, JJ., concur.