IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 17, 2004

IN RE:  ESTATE OF CORA VEAL

Appeal from the Probate Court for Monroe County
No. 2002-103     Edwin C. Harris, Judge

Filed September 16, 2004

No. E2003-02739-COA-R3-CV

The Monroe County Senior Citizens Center ("the Center") – a 501(c)(3) non-profit corporation –
filed a claim against the Estate of Cora Veal ("the Estate").  The Center alleges that Cora Veal ("Mrs.
Veal") personally promised to pay for repairs to the Center's roof, but that she failed to completely
honor her promise prior to her death at the age of 92 on September 16, 2002.  The trial court denied
the Center's claim.  The Center appeals, claiming the trial court erred in its interpretation of Tenn.
Code Ann. § 24-1-203 (2000), the so-called Tennessee Dead Man's Statute ("the Statute").  We
affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J.,
joined.  HERSCHEL P. FRANKS, P.J., filed a separate dissenting opinion.

Barry K. Maxwell, Knoxville, Tennessee, for the appellant, Monroe County Senior Citizens Center.

W. Holt Smith, Madisonville, Tennessee, for the appellees, Randall Tallent and Lon Shoopman, Co-
Executors of the Estate of Cora Veal.

**OPINION**

I.

It is the theory of the Center that Mrs. Veal, a member of the Center's Board of Directors and a long time benefactor of the Center,[1] agreed to pay the $11,200 cost of having the Center's roof repaired. Prior to her death, Mrs. Veal gave the Center a check for $1,000, which was applied by the Center to this project. No further payments were made on the promise.

The Center's roof was repaired in 2002. It is the further theory of the Center that it relied on Mrs. Veal's promise when it contracted for the repair of the roof and that it is, therefore, entitled to recover the balance of her promise, being $10,200, against the Estate on the theory of promissory estoppel. *See **Bill Brown Constr. Co. v. Glens Falls Ins. Co**., 818 S.W.2d 1, 12 (Tenn. 1991).

The trial court sustained the Estate's objection to all evidence of a promise by Mrs. Veal. The court did so based upon the Statute. Following the hearing, the trial court took the case under advisement. On October 6, 2003, the trial court filed its order denying the Center's claim. The order recites, in part, as follows:

> Without addressing the question of enforcement of the alleged promise, reliance thereon, action or forbearance of substantial character, inducement of such action or forbearance or any other matters which bring such pledge under the doctrine of promissory estoppel, *this court finds that claimant has not met the burden of proof that the decedent ever made such a pledge.* The only proof offered by claimant was the testimony of the director and board member of the claimant, a non-profit corporation, of any such transaction between claimant and decedent. Testimony was timely objected to, and all of which testimony concerning any transaction with decedent was barred by the dead man's statute. Therefore, the claim is denied.

(Emphasis added).

II.

Frances Maxwell, the executive director of the Center and a member of its Board, testified on its behalf. She was asked if "Mrs. Veal ever promised to pay for any of the capital improvements to the Cora Veal Center that she had not paid." The Estate interposed an objection based solely upon the Statute, which objection was sustained by the trial court. Subsequently, the Center, through Ms. Maxwell, attempted to introduce the minutes of the June 11, 2001, meeting of the Board of Directors

---

[1] The undisputed proof is that Mrs. Veal was a charter member of the Center's Board and that she had been a director of the Center for over 28 years. During her lifetime, she donated approximately $300,000 to the Center. The Center's lone witness at trial testified that the Center was known as the "Cora Veal Senior Citizens Center."

of the Center.  The minutes are signed by "Grace Hawkins, Secretary" and contain, among other things, the following:

> Cora reported on the roof.  She has contractors who will put large vents at each end of the roof.  She says this will take care of the leak, and she is paying all expenses for these repairs.  Thanks Cora.

The Estate again objected and cited the Statute.  The trial court again sustained the objection.  The June 11, 2001, minutes were marked as an exhibit, apparently for the purpose of identification only.

The Center also sought to introduce minutes of a Board meeting on October 15, 2001, which minutes contain the following:

> Cora is still trying to get the roof repaired.  She says she will eventually get it repaired.

This tender of proof was again met by an objection based upon the Statute.  Again, the trial court sustained the objection.  The same sequence of events occurred with respect to the minutes of the Board's meeting on January 14, 2002, which minutes recite, in part, that

> Cora was unable to attend the meeting, but sent her report on the roof project for the building.  She says she plans to get the leak repaired and she will pay the cost which will be about $7000.

In each instance, the minutes were marked as an exhibit to identify them.  Finally, the trial court sustained an objection – again based upon the Statute – to the following question posed by the Center's counsel to Ms. Maxwell:

> Did you have any conversation with her about whether she was going to pay for this roof repair job?

### III.

The Statute provides as follows:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party.  If a corporation is a party, this disqualification shall extend to its officers of every grade and its directors.

Tenn. Code Ann. § 24-1-203.  It has been said that the purpose of the Statute is

> to prevent the surviving party from having the benefit of his own testimony, when, by the death of his adversary, his representative was deprived of his executor's version of the transaction or statement.

*McDonald v. Allen*, 67 Tenn. 446, 448 (1874).  The Statute is "strictly construed as against the exclusion of the testimony and in favor of its admission."  *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 231 (Tenn. Ct. App. 1976); *see also In re Estate of Murphy*, C/A No. E2002-00481-COA-R3-CV, 2002 WL 31662542, at *2 (Tenn. Ct. App. E.S., filed November 26, 2002).

In the case of *Watts v. Rayman*, 462 S.W.2d 520 (Tenn. Ct. App. 1970), we noted the following:

> Within the meaning of the statute "transaction with or a statement by" the deceased pertain to matters of *personal communication between the claimant and the deceased.*

*Id*. at 522 (emphasis added).

IV.

The Center argues that there is an abundance of evidence, not objected to by the Estate, showing Mrs. Veal's involvement with the project to repair the roof on the Center's facility and her active participation in, and past largess toward, the Center and its activities.  The Center also points to the fact that Mrs. Veal was present at the Board's meeting of March 14, 2002, when the minutes of the Board's meeting of January 14, 2002 – containing the language "[Mrs. Veal] will pay the cost [of the roof repairs]" – were read and approved.

The issue before us is not whether Mrs. Veal was in charge of, or actively involved in, the project to repair the roof.  Furthermore, the issue is not whether Mrs. Veal had been a generous benefactor of the Center in the past or whether she was a long-time, active member of the Center's Board of Directors.  The issue really is not even whether Mrs. Veal made a promise or pledge to pay for the roof repairs or whether she approved minutes of a meeting of the Board containing such a pledge.  The only issue before us is whether the corporation, as an entity or through a member of its Board of Directors, can testify about Mrs. Veal's pledge.  The answer to this question turns on the proper interpretation of the Statute.

The Statute provides that "[i]f a corporation is a party, [the] disqualification [of the Statute] shall extend to its officers of every grade *and its directors*."  (Emphasis added).  The minutes reflect that the witness, Ms. Maxwell, was a member of the Center's Board of Directors.  Thus, the Statute applies to the testimony of Ms. Maxwell even though she is not personally a party to this litigation.

All of the statements of Mrs. Veal offered through the testimony of Ms. Maxwell were properly excluded by the trial court. Our conclusion applies with equal force to the statements made by Mrs. Veal as reported in the minutes as well as to the communications with Ms. Maxwell. In both cases, Mrs. Veal's communications were *with the corporation*. When Mrs. Veal made her statements at the meetings of the Center's Board of Directors, she clearly was "talking" to the corporation – she was promising the corporation that she would personally pay for the repairs to the Center's roof. The dissent seems to argue that the Statute – as applied to a corporation – only pertains to the oral testimony of the corporation's officers and directors. We disagree with the dissent's reading of the "disqualification shall extend to" language of the Statute. We do not interpret the "extend to" language as limiting language but rather as expansive language. As we read the last sentence of the Statute, it is intended to *broaden* the restriction of the Statute beyond the corporation so as to include its officers and directors. In other words, the corporation is barred from "testifying" and this bar *also* "extend[s] to" the corporation's officers and directors. A corporation is "testifying" when it tenders, for introduction into evidence, the minutes of its board's meetings for the purpose of proving a promise as set forth in those minutes. We do not read the last sentence of the Statute as excluding such "testimony" from the application of the Statute.

The dissent relies upon a number of cases to support its argument that the Statute does not apply to, in the words of the dissent, "documentary evidence of the decedent's statements prior to death." We find nothing in these cases that would preclude the application of the Statute to a statement of a deceased contained in the minutes of a meeting of a corporation's board of directors. As pertinent to the facts of the instant case, the ***Upchurch*** case simply holds that the plaintiff's "identification of [a] deceased's signature" on a document does not run afoul of the Statute. ***In re Estate of Upchurch***, 466 S.W.2d 886, 890 (Tenn. Ct. App. 1970). The other cases cited by the dissent deal with promissory notes or checks. In the instant case, we are not focused on a *document* such as a note, check, or contract, which, on its face and without more, ostensibly gives rise to legal rights and obligations. Rather, we are dealing with a *statement* of an intent to make a gift to a corporation, a promise made without consideration and one that requires more before it ripens into a legal obligation. The Statute prevents the corporation from testifying about Mrs. Veal's statement. Since there is no other evidence of her promise to pay for roof repairs over and above the $1,000 paid by her prior to her death, the trial court was correct in dismissing the corporation's claim, which is based solely upon the theory of promissory estoppel.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the Monroe County Senior Citizens Center. This case is remanded for collection of costs assessed in the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE