2009 Ark. App. 174

**L.F. BRANDS MARKETING, INC., Appellant,**

v.

**DILLARD'S, INC., Appellee.**

**No. CA 07–1210.**

Court of Appeals of Arkansas.

March 11, 2009.

Rehearing Denied April 22, 2009.

Rodney T. Harmon; Ezra/Brutzkus/Gubner LLP, by: Mark D. Brutzkus; and Wilson, Engstrom, Corum & Coulter, by: Nate Coulter, Little Rock, for appellant.

Friday, Eldredge & Clark, LLP, by: David D. Wilson, Little Rock, for appellee.

RITA W. GRUBER, Judge.

This case involves breach-of-contract claims between appellee Dillard's, Inc., and appellant L.F. Brands Marketing, Inc. (L.F. Brands), one of Dillard's suppliers. A Pulaski County jury awarded Dillard's $1,265,938.98. On appeal, L.F. Brands argues that the written purchase orders between the parties control over prior oral agreements between the parties concerning allowances Dillard's deducted from the account balance between the parties. We affirm.[1]

L.F. Brands sold clothing to Dillard's for many years. Dillard's would submit purchase orders to L.F. Brands, describing the merchandise and price of the goods, among other things. A document entitled "Dillard's, Inc. Purchase Order

---

1. L.F. Brands raises a second point concerning prejudgment interest. However, that point depends upon this court reversing the judgment in Dillard's favor and entering judgment in L.F. Brands's favor. Because we affirm the circuit court on the first point, we do not discuss this second point.

Terms, Conditions & Instructions" ("purchase order document"), applied to all transactions involving Dillard's purchase orders. Included in that document was the following provision, hereinafter referred to as "paragraph A2":

> [L.F. Brands] acknowledges by acceptance and shipment against any Dillard Purchase Order that the terms, conditions and instructions stated herein, in the Purchase Order, [and in two other Dillard's documents](collectively, the "Agreement") shall bind [L.F. Brands] and shall constitute the entire agreement between Dillard and [L.F. Brands], which cannot be modified by either party except in a writing executed by both parties, or [another method]; provided, however, that this provision shall not apply to markdown allowance and other credits authorized by [L.F. Brands]. . . .

In another provision, Dillard's was allowed to offset all merchandise allowances, chargebacks, and other credits from any invoices or other amounts due L.F. Brands ("paragraph B11"). The purchase order document also contained a second merger/integration clause ("paragraph F6"), as well as a provision requiring any amendments, modifications, or cancellations to be in writing ("paragraph F7").

L.F. Brands went out of business in December 2003. In February 2004, at the end of its fiscal year, Dillard's deducted markdown allowances and chargebacks from its account balance with L.F. Brands.[2] These allowances and chargebacks are the subject of this appeal. L.F. Brands filed suit for breach of contract on September 15, 2005, alleging that Dillard's owed $2,367,601.19. Dillard's denied the allegations of the complaint and asserted that the amount sought was subject to setoffs for claims, allowances, discounts, and chargebacks in excess of the amount Dillard's owed L.F. Brands. Dillard's also filed a counterclaim seeking to recover the debit balance L.F. Brands owed.

■ The record before us contains undisputed testimony from several employees of both L.F. Brands and Dillard's that the parties would agree on a gross margin for Dillard's at the beginning of each fashion season. In 2003, the agreement would be that Dillard's would have a 40% margin for L.F. Brands' dresses and a 38% margin for sportswear. The parties would monitor the sales of the clothing throughout the course of the season, and allowances would be processed at various times during the year to make adjustments to the margins. At the end of the year, the parties would determine whether the gross-margin goal had been met. If it had not, the parties would negotiate on further allowances to achieve an acceptable margin less than the goal. In 2002, the parties had agreed on similar margins that were not met. After negotiations between the parties, Dillard's processed allowances that allowed it to achieve margins greater than 30%.

Prior to trial, the circuit court denied motions for summary judgment by both parties, finding that the entirety of the parties' agreement must be determined by looking to both the written documents, as supplemented by their oral agreements. The court further found that there was some ambiguity in paragraph A2 when read with the rest of the document, particularly paragraph B11. The court noted that parol evidence could be admitted to explain the ambiguity.

---

**2.** The parties use the terms "markdown allowances," "merchandise allowances," and "margin allowances" interchangeably.

The case was submitted to the jury on instructions that included a definition of "course of dealing" and that course-of-dealing evidence may be used to give particular meaning to and supplement the terms of the agreement. The jury found for Dillard's on L.F. Brands's complaint. The jury also found for Dillard's on its counterclaim and awarded $1,265,938.98. Judgment was entered on the jury's verdict on May 9, 2007. L.F. Brands filed a motion for judgment notwithstanding the verdict, asserting that the merger clause of the purchase order document superceded the prior oral agreements concerning merchandise allowances. The circuit court did not rule upon the motion and it was deemed denied. L.F. Brands timely filed its notice of appeal.[3]

L.F. Brands does not challenge the sufficiency of the evidence. Instead it argues that the merger/integration clause in the purchase order document as a matter of law superceded any prior oral agreements between itself and Dillard's. L.F. Brands asserts that the purchase order document was the parties' complete agreement and that, because the document also discussed the merchandise allowances, the circuit court should not have allowed Dillard's to introduce the course-of-dealing and course-of-performance evidence. We disagree. This argument sweeps too broadly in this case for the sale of goods governed by Article 2 of the Uniform Commercial Code (UCC), which has a specific provision allowing parol evidence to be introduced even in situations involving fully integrated written agreements.

Under the UCC's parol evidence rule, a writing intended to be the parties' final expression of their agreement may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement, but it may be explained or supplemented by evidence of the parties' course of dealing or course of performance. Ark. Code Ann. § 4–2–202(a) (Supp.2007); *Bank of Am. v. C.D. Smith Motor Co.*, 353 Ark. 228, 106 S.W.3d 425 (2003). Arkansas Code Annotated section 4–1–303 (Supp. 2007), referred to in section 4–2–202(a), provides in relevant part as follows:

(a) A "course of performance" is a sequence of conduct between the parties to a particular transaction that exists if:

(1) the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and

(2) the other party, with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.

(b) A "course of dealing" is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

. . . .

(d) A course of performance or course of dealing between the parties . . . is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement.

---

**3.** After judgment was entered, Dillard's moved for attorney's fees under Arkansas Code Annotated section 16–22–308. The circuit court granted the motion and awarded Dillard's $264,654.50 in fees. L.F. Brands filed a timely notice of appeal from the fee award. However, no issue concerning the fees is raised in this appeal.

We need not decide whether the evidence in this case is properly called "course of dealing" evidence or "course of performance" evidence because both terms would apply under the circumstances of this case.

L.F. Brands relies upon the supreme court's decisions in *Farmers Cooperative Association v. Garrison,* 248 Ark. 948, 454 S.W.2d 644 (1970), and *Ultracuts, Ltd. v. Wal–Mart Stores, Inc.,* 343 Ark. 224, 33 S.W.3d 128 (2000), in support of its argument that the purchase order was a complete agreement with a merger/integration clause and, therefore, the parol evidence rule barred introduction of the testimony concerning the merchandise allowances. However, *Farmers Cooperative* and *Ultracuts* were not UCC sales cases and did not involve or discuss parol and course-of-dealing/course-of-performance evidence.

■ In *Bank of America,* the Arkansas Supreme Court held that the use of course-of-performance and course-of-dealing evidence is allowed even when the written instrument is a final, written expression as to terms and that the writing is a "complete and exclusive statement" because such evidence can be admitted to "explain" the meaning of terms in the writing. 353 Ark. at 244, 106 S.W.3d at 434 (quoting 1 White & Summers, *Uniform Commercial Code,* § 2–12, at 104 (4th ed.1995)). In such instances, the evidence of a course of dealing that explains or supplements a contract is competent evidence of the parties' intent and can become a part of a contract. *Bank of America, supra; Precision Steel Warehouse, Inc. v. Anderson–Martin Mach. Co.,* 313 Ark. 258, 854 S.W.2d 321 (1993).

In the present case, we conclude that the circuit court did not err in finding that the purchase order document and its merger clauses did not preclude course-of-dealing or course-of-performance evidence because that evidence supplemented, not contradicted, the parties' agreement. Although the purchase order document references merchandise allowances, it does not set forth any agreement as to what Dillard's gross margin would be. That was the subject of a separate oral agreement between the parties, negotiated on a yearly basis as to each line of clothing. The testimony about what Dillard's gross margin would be is consistent with the purchase order document that allows Dillard's to deduct such allowances. Moreover, even if we accept L.F. Brands's argument that the purchase order document was the final and complete integration of the parties' agreement, the course-of-performance/course-of-dealing evidence would still be admissible because merger clauses do not apply to modifications made after the merged agreement is signed. *See In re Estate of Upchurch,* 62 Tenn.App. 634, 466 S.W.2d 886 (1970). Here, the parties modified the agreements as to Dillard's gross margins at the end of each season. It is also important to note that L.F. Brands failed to object to any of the course-of-dealing and course-of-performance evidence, either at the time Dillard's processed the allowances or at trial. Thus, there was no error. *Lake Village Implement Co. v. Cox,* 252 Ark. 224, 478 S.W.2d 36 (1972). Finally, according to comment 1 to section 4–2–202, there is no requirement that the writing be declared ambiguous before evidence of the parties' course of dealing and course of performance is admissible.

We cannot say that the circuit court abused its discretion in admitting such course-of-dealing evidence. Accordingly, we affirm the judgment.

Affirmed.[4]

PITTMAN and BAKER, JJ., agree.

4.   We deny as moot Dillard's motions to strike.